206 P.3d 355 (2009)
STATE of Washington, Respondent,
v.
S.J.W., Appellant.
No. 61753-2-I.
Court of Appeals of Washington, Division 1.
April 27, 2009.
*357 Jennifer J. Sweigert, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Colleen Sue Kenimond, Prosecuting Atty. of Island Co., Coupeville, WA, for Respondent.
LEACH, J.
¶ 1 S.J.W. appeals his conviction for third degree rape. He contends that the juvenile court erred in ruling that the victim, W.M., who was 14 years old at the time of trial, was competent to testify under State v. Allen[1] and in failing to strike W.M.'s trial testimony due to its inconsistencies. S.J.W. also claims that the court erred when it admitted statements he made to a police officer, arguing that they were made during a custodial interrogation and required Miranda[2] warnings. We hold that, under Allen, the court erred in placing the burden on S.J.W. to prove that W.M. was incompetent to testify. But this error does not warrant reversal because our review of W.M.'s trial testimony shows that he satisfied the requirements set forth in Allen. The court also acted within its discretion when it did not to strike W.M.'s trial testimony. Finally, the court properly admitted statements made by S.J.W. during a noncustodial interview at W.M.'s house, in his mother's presence. Accordingly, we affirm.

Background
¶ 2 W.M. is developmentally delayed due to a seizure disorder and requires constant supervision. From about September 2007 until the beginning of November 2007, W.M.'s parents paid S.J.W., who was a neighbor and friend of W.M., to watch him once a week. At the time of the incident, both were 14 years old.
¶ 3 On October 3, 2007, S.J.W. watched W.M. for about 45 minutes until W.M.'s father returned from work about 5:50 p.m. W.M.'s father heard S.J.W. leaving the house and found his son in the bathroom dressing himself. When asked by his father what he was doing, W.M. replied, "I'm getting dressed. Like [S.J.W.]." Then he told his father S.J.W. had "stuck his pee-pee in his butt." W.M. repeated this when his father asked him a second time.
¶ 4 After receiving a call from W.M.'s father, S.J.W.'s mother returned with S.J.W. to W.M.'s house around 6:15 p.m. W.M.'s father phoned the police and spoke with Officer *358 Patrick Horn. Horn also spoke with S.J.W. over the phone, and according to Horn, S.J.W. admitted having sexual contact with W.M. When Horn arrived at the house, W.M.'s father stated that he wanted to file a report but not do "anything further." Horn then asked to speak with S.J.W. and his mother privately, and W.M.'s father showed them to the master bedroom. S.J.W.'s mother closed the door, and she and Horn stood a few feet from S.J.W., who sat on the bed.
¶ 5 Horn testified that he read S.J.W. his Miranda rights before questioning him. But W.M.'s father and S.J.W.'s mother testified that Horn advised S.J.W. of his Miranda rights after questioning him, and the court found their testimony credible. At the interview, S.J.W. chose not to answer some of Horn's questions, but he admitted having oral and anal intercourse with W.M. He also told Horn that he "knew he could take advantage of [W.M.] because he was retarded." Later in the interview, S.J.W.'s mother became upset so she opened the door and asked W.M.'s father to come inside. W.M.'s father remained in the room. Towards the end of the interview, Horn stated he was not taking S.J.W. into custody and asked him to make a written statement. S.J.W.'s mother refused to allow Horn to obtain a written statement and terminated the interview.
¶ 6 Horn next interviewed W.M. and both of his parents in the bedroom.[3] Horn testified that he asked as few questions as possible to avoid "lead[ing] [W.M.] in any direction." W.M. told Horn that S.J.W. "made me lick his penis" and then directed him to lie down on the bed. When W.M. said he did not want to continue, S.J.W. responded, "Just be quiet and do it." W.M. said S.J.W. then "put his penis in my butt."
¶ 7 At the CrR 3.5 confession hearing on May 2, 2008, the court ruled that Horn's interview with S.J.W. was noncustodial based on the following facts: (1) S.J.W. was in a private residence; (2) S.J.W. did not answer some of Horn's questions; (3) S.J.W.'s mother was present during the interview; (4) S.J.W.'s mother shut the bedroom door at the start of the interview and later opened the door to call W.M.'s father into the room when she became upset; (5) W.M.'s father remained in the room; and (6) S.J.W.'s mother terminated the interview when Horn attempted to obtain a written statement. The court concluded that S.J.W.'s statements at the interview were voluntary and admissible.
¶ 8 At the competency hearing on May 6, 2008, S.J.W. called Dr. Sidney Sparks, W.M.'s pediatrician. On direct examination, Sparks was asked, "[W]hen you question a child, is there a particular manner in which you go about it?" The State objected, and the court sustained, stating that it was "not so concerned about how [W.M.] was questioned." Sparks then described W.M.'s abilities, opining that he functioned at a mental level comparable to a four to six-year-old. She testified that W.M. was able to answer direct questions but "can often be found to change his mind depending on how the question is asked." When asked about W.M.'s ability to tell the difference between truth and falsity, Sparks answered:
I don't know that I've ever specifically thought about whether he knows the difference between true and not true. I have thought about whether he is able to relate to me all the pieces of information I need and whether I can trust the ones he gives. Particularly in regard to time, he has difficulty.
¶ 9 W.M.'s father also testified that it "takes a while to get a true, accurate story out of [W.M.]." For example, he stated that his son once said that they had been at a park in the evening when, in reality, they had been there in the morning. Another time, W.M. talked about an airplane trip to Milwaukee that they had never taken. Similarly, after a football game, W.M. told his father that certain people had been there when they had not. W.M.'s father did not specify when these events occurred.
¶ 10 W.M.'s mother provided other examples in her testimony. She related how W.M. had been able to remember a baseball score but inaccurately reported that the Mariners won "because he wants them to win." She also described how W.M. often does not remember what he ate for lunch. On another *359 occasion, W.M. was unable to repeat information to a doctor immediately after it was given to him. Although he remembered the information "perfectly" the next day, he could not recall it after that day. W.M.'s mother did not specify when these events occurred.
¶ 11 The State did not call any witnesses, and the trial court did not examine W.M. Based on the evidence presented, the court found W.M. competent. The court first explained that in applying the Allen test, the burden to demonstrate W.M.'s incompetency rested on S.J.W. "When a child is over 14, there is a presumption that that child is competent. So there has to be the burden on the person who is saying that person is not competent to show by a preponderance of the evidence." The court concluded that S.J.W. had failed to meet this burden:
[T]he types of issues you're bringing up go to the credibility of this particular witness....
But I've not heard anything about the "events in question." I've heard about lunches. I've heard about a Mariners game. I heard about some other situations which are, you know, troubling. And I think will be troubling to a jury. But not necessarily about the events in question. And that's what I have to look at.
As long as the child is able to demonstrate an independent recollection of the events in question and has the ability to describe them, then the child's equivocal or inability to recall details or to recall other things goes to the weight of the testimony.
.... There just has not been that finding by a preponderance of the evidence that the child is unable to recollect the events in question.
¶ 12 At the bench trial on the next day, the State called W.M. W.M. testified that Horn had come to his house "because [S.J.W.] put his peanuts in my butt." When asked to clarify what he meant by "peanuts," W.M. pointed to his groin. The prosecutor then asked W.M. whether he consented to having sexual intercourse with S.J.W.
Q: What did you tell [S.J.W.]?
A: Stop. Stop doing that.
Q: Why did you tell him to stop doing that?
A: Because he was doing something to me.
Q: Did you want him to do that?
A: No.
After intercourse, W.M. said, "I cried." But W.M. gave inconsistent answers when asked if he had performed oral intercourse on S.J.W. He also said that when he told S.J.W. to stop, he was playing video games. Later, he said he was playing basketball.
¶ 13 Additional witnesses called by the State included W.M.'s father, Horn, and Carl Seim, a police detective who investigated the case. W.M.'s father and Horn related their version of events as described above. Seim testified that W.M. was able to answer questions and recall past events based on his interview with W.M. S.J.W. called both of W.M.'s parents. W.M.'s father testified about writing a statement for the police. W.M.'s mother testified that she did not find any signs of physical trauma when she examined her son, but she conceded that she had no training with handling rape victims.
¶ 14 The court found S.J.W. guilty of third degree rape under RCW 9A.44.060(1)(a).[4] In its oral ruling, the court stated that sexual intercourse had occurred, S.J.W. and W.M. were not married, and W.M. "clearly expressed his lack of consent by saying, `Stop. Stop doing that.' The fact that [W.M.] then followed [S.J.W.'s] directions to `Lie down on the bed and do it anyway' is not conduct that indicates freely given agreement to have sexual *360 intercourse." At the dispositional hearing on May 21, 2008, the court decided that two aggravating factors existed to support a manifest injustice sentence outside the standard range: W.M. was particularly vulnerable and the crime was an abuse of trust. S.J.W. was sentenced to 39 to 52 weeks commitment.

Discussion

I. Competency Determination

¶ 15 S.J.W. contests the court's competency ruling on grounds that it erred in placing the burden on him to establish W.M.'s incompetency. He argues that when the competency of a child witness is challenged, the burden of proving the child's competency rests on the party calling the witness.
¶ 16 In Washington, "[t]he competency of a child witness is presumed by statute."[5] Under RCW 5.60.020, "[e]very person of sound mind and discretion, except as hereinafter provided, may be a witness in any action, or proceeding."[6] RCW 5.60.050 provides an exception to this general rule of competency:
¶ 17 The following persons shall not be competent to testify:
(1) Those who are of unsound mind, or intoxicated at the time of their production for examination, and
(2) Those who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly.[[7]]
When the competency of a child witness is challenged, the trial court applies the test for determining child competency set forth in Allen. Under this test, the child must demonstrate:
(1) an understanding of the obligation to speak the truth on the witness stand, (2) the mental capacity at the time of the occurrence to receive an accurate impression of the matter about which the witness is to testify, (3) a memory sufficient to retain an independent recollection of the occurrence, (4) the capacity to express in words the witness' memory of the occurrence, and (5) the capacity to understand simple questions about it.[[8]]
Determining the child's ability to meet these five Allen factors rests primarily with the trial judge, who must find that all five factors are met before the child can be declared competent.[9] While analysis of the Allen factors should be addressed on the record, the failure to enter written findings does not preclude review or require reversal when the record is sufficient for this court to independently assess whether the factors have been met.[10] A trial court's competency ruling is reviewed for an abuse of discretion.[11]
¶ 18 Consistent with the framework discussed above, when the competency of a child witness is challenged, the burden of proving the child's competency rests on the *361 party calling the child.[12] For example, in In re Dependency of A.E.P.,[13] the trial court questioned five-year-old A.E.P. about allegations of sexual abuse by her father, and she supplied details about incidents involving the alleged touching.[14] But the court never asked A.E.P. when these incidents had occurred.[15] Nonetheless, the court found that A.E.P. was competent to testify and concluded that A.E.P. had been abused by her father.[16] On appeal, our Supreme Court reversed. The court emphasized that A.E.P. was asked only once on cross-examination when the abuse occurred and "she was unable to fix any particular point in time when the alleged touching occurred."[17] The court also pointed out that there was "simply no information in the record which helps narrow the time window of when the event occurred."[18] As a result, the court concluded that "A.E.P.'s competence to testify was not properly established, due to the absence of the critical information regarding when the alleged abuse occurred."[19] In particular, the court held that the second Allen factor had not been met, reasoning that the trial court "cannot possibly rule on a child's `mental capacity at the time of the occurrence . . ., to receive an accurate impression of it' when the court has never determined when in the past the alleged events occurred."[20] Thus, A.E.P. teaches that the Allen factors must be supported by affirmative evidence and that the failure of the party calling the child witness to carry its burden of presenting critical information results in a finding of incompetency.[21]
¶ 19 Similarly, in State v. Karpenski,[22] the trial court found that seven-year-old Z was competent to testify, even though at the competency hearing, Z vividly portrayed how he and his younger brother had been born at the same time.[23] In deciding whether the trial court abused its discretion, Division Two described the nature of a trial judge's discretion in handling competency questions. "[W]hen a trial judge addresses a competency-related question of preliminary fact, he or she has discretion to inquire whether the evidence preponderates in favor of that fact."[24] The court explained that the judge "`select[s] which portions [of evidence] have the greater persuasive value'" and decides whether those portions weigh in favor of competency.[25] Accordingly, when the Karpenski court applied the Allen test, it framed the issue as the following question: "[C]ould a trial judge reasonably find it to be more *362 likely true than not true that Z was capable of distinguishing truth from falsity?"[26] Based on Z's incoherent testimony, the court answered this question in the negative, declaring that "the evidence is insufficient to support a finding that Z was capable of distinguishing truth from falsity."[27] Thus, Karpenski establishes that the trial judge's function is to decide whether the evidence preponderates in favor of competency, with the burden resting on the party calling the child witness to present evidence that demonstrates competency.
¶ 20 The State asserts that the burden rests on the party opposing the child witness, relying on State v. Smith.[28] There, the court held, "[W]here a person has been adjudicated insane, a presumption of incompetency arises, rebuttable by the person offering the witness. Where there has been no such adjudication, the burden is on the party opposing the witness to prove incompetence."[29] But Smith concerns challenges to an adult witness's competency under the "unsound mind" exception in RCW 5.60.050(1).[30] Since S.J.W. does not challenge W.M.'s competency under that exception, Smith does not apply here. Thus, the court erred in placing the burden on S.J.W. to prove W.M.'s incompetency.
¶ 21 This error, however, does not warrant reversal in this case. "Although a trial court determines competence pretrial, on appeal we will examine the entire record to review that determination."[31] Here, W.M.'s trial testimony shows that he met all five Allen factors. W.M. responded affirmatively when asked by the prosecutor whether he promised to tell the truth, satisfying the first factor, an understanding of the obligation to speak the truth on the witness stand.[32] W.M.'s initial report to Officer Horn and his specific recollections about the incident eight months later at trial demonstrated that he had the mental capacity at the time of the incident to receive an accurate impression of it, satisfying the second factor.[33] For example, W.M. was able to specifically recall that on the day of the incident, Officer Horn arrived at his house after school to ask him questions about the alleged rape. W.M. also remembered that his father, S.J.W., and S.J.W.'s mother were at the house when Horn arrived. In addition to this testimony, the trial court was able to observe W.M.'s overall demeanor and manner and infer that the second factor was met.[34] W.M.'s recollections of the incident also satisfy the third factor, a memory sufficient to retain an independent recollection of the occurrence. W.M. testified consistently that anal intercourse occurred and that he told S.J.W. to stop. Finally, W.M.'s answers to the prosecutor's questions showed that he had the capacity to express his memories of the incident and to understand questions about it, thus meeting the fourth and fifth Allen factors.
¶ 22 S.J.W. points to inconsistencies in W.M.'s testimony regarding oral intercourse and other details. According to S.J.W., these inconsistencies revealed W.M.'s incompetency at trial and required the court to strike his testimony. But these inconsistencies in W.M.s testimony go only to his credibility, *363 not to admissibility.[35] W.M. also consistently reported and later testified that S.J.W. had anal intercourse with him and that he did not give S.J.W. consent. The trial court did not abuse its discretion when it admitted and did not strike W.M.'s testimony.[36]
¶ 23 In upholding the trial court's competency ruling, we also reject S.J.W's contention that the court erred in failing to consider evidence of memory taint.[37] The only evidence on this point consists of allegations that Horn used suggestive and leading questions.[38] But this evidence does not show that W.M. was rendered incapable of testifying accurately at trial about the incident. Nor does it demonstrate that Horn's questioning rises to the level of the improper interview techniques described by Division Three in State v. Carol M.D.,[39] which include using threats and bribes, asking repetitive and persistent leading questions, and holding multiple and extended interviews.[40] Indeed, at trial S.J.W. conceded the accuracy of most of W.M.'s testimony and controverted the inference to be drawn from the fact W.M. followed S.J.W.'s direction after telling S.J.W., "Stop. Stop doing that." Therefore, any error the court may have committed in failing to consider additional evidence of memory taint is harmless.
¶ 24 In sum, the court erred in holding that S.J.W. carried the burden of proving W.M. was incompetent to testify. This error, however, does not require reversal because W.M.'s trial testimony shows that he was competent under the five Allen factors.

II. Noncustodial Interrogation

¶ 25 S.J.W. argues that the court erred in admitting statements he made to Horn because they were made during a custodial interrogation and required Miranda warnings.
¶ 26 Under the federal and state constitution, a juvenile possesses rights against self-incrimination.[41]Miranda warnings protect these rights when a defendant is in police custody.[42] But outside the context of custodial interrogation, Miranda does not apply.[43] Our courts determine whether an interrogation is custodial using an objective standard, which is "whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest."[44] A trial court's custodial determination is reviewed de novo.[45]
¶ 27 S.J.W. contends that the interview was custodial because no reasonable person would have believed he was free to leave under the circumstances. Relying on State v. D.R.,[46] S.J.W. points out that Horn did not tell him that he could leave or refuse to answer questions. Horn also stood in front *364 of the doorway and frequently rested his hand on the butt of his gun.
¶ 28 But D.R. is distinguishable. In that case, a detective interviewed 14-year-old D.R. regarding allegations of incest with his sister.[47] The interview was conducted in the assistant principal's office, with the assistant principal and a social worker present.[48] While the detective did not give D.R. Miranda warnings, he told D.R. he did not have to answer questions.[49] During the interview, the detective asked leading questions and made accusatory statements such as, "`[w]e know you've been havin' [sic] sexual intercourse with your sister'" and "`[w]e know already because [your sister] told us.'"[50] On appeal, Division Three held that the interrogation was custodial due to the detective's "failure to inform him he was free to leave, D.R.'s youth, the naturally coercive nature of the school and principal's office environment for children of his age, and the obviously accusatory nature of the interrogation."[51]
¶ 29 Although S.J.W. was not told he could leave, unlike the "naturally coercive setting" in D.R., the interview here took place in a private residence familiar to S.J.W. In addition, S.J.W.'s mother was present. Significantly, she called W.M.'s father into the room when she became upset, and she terminated the interview when Horn attempted to obtain a written statement. While Horn did not tell S.J.W. that he could refuse to answer his questions, S.J.W. chose not to answer some of Horn's questions. Finally, unlike the interrogation in D.R., Horn's interview was not "obviously accusatory" in nature. Under these circumstances, we conclude that the interview was noncustodial for the purposes of Miranda and that S.J.W.'s statements were admissible.

Conclusion
¶ 30 In applying the Allen test for child competency, the trial court erred in placing the burden on S.J.W. to show W.M.'s incompetency. But this error does not require reversal because an independent review of W.M.'s trial testimony establishes that all five Allen factors were satisfied. The court also acted within its discretion when it did not strike W.M.'s testimony, and it properly admitted statements made by S.J.W. during a noncustodial interview. S.J.W.'s third degree rape conviction is affirmed.
WE CONCUR: LAU, and AGID, JJ.
NOTES
[1] 70 Wash.2d 690, 424 P.2d 1021 (1967). In determining the competency of a mentally disabled 14-year-old, the test set forth in Allen applies. See State v. Wyse, 71 Wash.2d 434, 437, 429 P.2d 121 (1967) (applying Allen test to a 14-year-old mentally disabled female, alleged by the defendant to have a mental age less than 10 years old).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] W.M.'s mother arrived at the house during Horn's interview with S.J.W.
[4] RCW 9A.44.060(1)(a) provides the elements of third degree rape:

(1) A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person, not married to the perpetrator:
(a) Where the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct.
RCW 9A.44.010(7) states that consent means that "at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact."
[5] State v. C.M.B., 130 Wash.App. 841, 843, 125 P.3d 211 (2005).
[6] ER 601 similarly states that "[e]very person is competent to be a witness except as otherwise provided by statute or by court rule."
[7] CrR 6.12(c) similarly provides:

The following persons are incompetent to testify: (1) Those who are of unsound mind, or intoxicated at the time of their production for examination; and (2) children who do not have the capacity of receiving just impressions of the facts about which they are examined or who do not have the capacity of relating them truly.
[8] State v. C.J., 148 Wash.2d 672, 682, 63 P.3d 765 (2003) (citing State v. Swan, 114 Wash.2d 613, 645, 790 P.2d 610 (1990)).
[9] In re Dependency of A.E.P., 135 Wash.2d 208, 223, 956 P.2d 297 (1998); State v. Sardinia, 42 Wash.App. 533, 536, 713 P.2d 122 (1986).
[10] State v. Avila, 78 Wash.App. 731, 735-36, 899 P.2d 11 (1995).
[11] State v. Karpenski, 94 Wash.App. 80, 101-02, 971 P.2d 553 (1999), abrogated on other grounds by C.J., 148 Wash.2d 672, 63 P.3d 765. Although the trial court did not examine W.M. at the competency hearing, it considered the testimony of defense witnesses in determining W.M.'s competency. The abuse of discretion standard is appropriate since the trial court's information is superior to the appellate court's. See Karpenski, 94 Wash.App. at 105, 971 P.2d 553.
[12] See also 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 601.6, at 299 (5th ed. 2007) ("The court has no obligation to determine the child's competency unless the child's competency is challenged. If the child's competency is challenged, however, the burden shifts to the proponent to establish the child's competence by a preponderance of the evidence."); 13B SETH A. FINE, WASHINGTON PRACTICE: CRIMINAL LAW § 2413, at 19 (Supp.2008-2009) ("The court is not required to hold a competency hearing absent any challenge to a witness's competency. If there is a challenge, a party who offers a child's testimony must establish the child's competency by a preponderance of the evidence.").
[13] 135 Wash.2d 208, 956 P.2d 297 (1998).
[14] A.E.P., 135 Wash.2d at 221, 956 P.2d 297.
[15] A.E.P., 135 Wash.2d at 221, 956 P.2d 297.
[16] A.E.P., 135 Wash.2d at 221, 956 P.2d 297.
[17] A.E.P., 135 Wash.2d at 224, 956 P.2d 297.
[18] A.E.P., 135 Wash.2d at 225, 956 P.2d 297.
[19] A.E.P., 135 Wash.2d at 234, 956 P.2d 297.
[20] A.E.P., 135 Wash.2d at 225, 956 P.2d 297 (quoting Allen, 70 Wash.2d at 692, 424 P.2d 1021).
[21] See also Jenkins v. Snohomish County Pub. Util. Dist. No. 1, 105 Wash.2d 99, 100-03, 713 P.2d 79 (1986) (reversing trial court's competency determination based solely on the child's deposition when the third Allen factor had not been met).
[22] 94 Wash.App. 80, 971 P.2d 553. Fine also cites Karpenski as standing for the proposition that the party calling the child witness must establish the child's competency by a preponderance of the evidence. 13B FINE, at 19 (Supp. 2008-2009).
[23] Karpenski, 94 Wash.App. at 106, 971 P.2d 553.
[24] Karpenski, 94 Wash.App. at 103-04, 971 P.2d 553.
[25] Karpenski, 94 Wash.App. at 103, 971 P.2d 553 (quoting State v. Borland, 57 Wash.App. 7, 10-11, 786 P.2d 810 (1990)).
[26] Karpenski, 94 Wash.App. at 105-106, 971 P.2d 553.
[27] Karpenski, 94 Wash.App. at 106, 971 P.2d 553.
[28] 97 Wash.2d 801, 650 P.2d 201 (1982).
[29] Smith, 97 Wash.2d at 803, 650 P.2d 201.
[30] Smith, 97 Wash.2d at 803, 650 P.2d 201.
[31] State v. Avila, 78 Wash.App. at 737, 899 P.2d 11; State v. Woods, 154 Wash.2d 613, 617, 114 P.3d 1174 (2005).
[32] See Avila, 78 Wash.App. at 736, 899 P.2d 11 (ruling that first Allen factor was met when five-year-old responded affirmatively when asked if she understood the importance of telling the truth to the judge).
[33] See Woods, 154 Wash.2d at 622, 114 P.3d 1174 (stating that testimony about events contemporaneous with the nine-month period during which the abuse could have occurred was evidence supporting the second Allen factor).
[34] See Sardinia, 42 Wash.App. at 537, 713 P.2d 122 (holding that a nine-year-old's overall demeanor and the manner of her answers were sufficient to permit the trial court to infer that the second Allen factor was met).
[35] See State v. Stange, 53 Wash.App. 638, 641-42, 769 P.2d 873 (1989).
[36] See State v. Moorison, 43 Wash.2d 23, 33, 259 P.2d 1105 (1953) (holding that a trial court "could" strike a defendant's testimony if the court is "convinced" that it mistakenly ruled on the defendant's competency). We further note that the record contains no evidence that S.J.W. moved to strike W.M.'s testimony at trial.
[37] See A.E.P., 135 Wash.2d at 230, 956 P.2d 297 (stating that evidence of memory taint may be considered at the competency hearing and negate a finding under the third Allen factor).
[38] W.M.'s father and mother provided affidavits stating that Horn asked leading questions regarding consent and introduced concepts of being hurt by the intercourse.
[39] 97 Wash.App. 355, 357-58, 983 P.2d 1165 (1999).
[40] Carol M.D., 97 Wash.App. at 357-58, 983 P.2d 1165.
[41] U.S. CONST. amend. V; WASH. CONST. art. 1, § 9. See RCW 13.40.140(8).
[42] State v. Lorenz, 152 Wash.2d 22, 36, 93 P.3d 133 (2004) (citing State v. Harris, 106 Wash.2d 784, 789, 725 P.2d 975 (1986)).
[43] Roberts v. United States, 445 U.S. 552, 560, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980).
[44] Lorenz, 152 Wash.2d at 36-37, 93 P.3d 133 (citing Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).
[45] Lorenz, 152 Wash.2d at 36, 93 P.3d 133 (citing State v. Broadaway, 133 Wash.2d 118, 131, 942 P.2d 363 (1997)).
[46] 84 Wash.App. 832, 930 P.2d 350 (1997).
[47] D.R., 84 Wash.App. at 833-34, 930 P.2d 350.
[48] D.R., 84 Wash.App. at 834, 930 P.2d 350.
[49] D.R., 84 Wash.App. at 834, 930 P.2d 350.
[50] D.R., 84 Wash.App. at 834, 930 P.2d 350.
[51] D.R., 84 Wash.App. at 838, 930 P.2d 350.