# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70620-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| DONALD KINSELL JONES, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 6, 2015 |
| | ) | |

LEACH, J. — Donald Kinsell Jones appeals his conviction for unlawful possession of a firearm in the second degree. He claims that the trial court should have suppressed evidence of his firearm possession as the fruit of an unlawful traffic stop. He also challenges the sufficiency of the evidence to prove one element of the charged crime, a predicate felony conviction. Because the State's evidence at the suppression hearing failed to justify the traffic stop under State v. Prado,[1] we reverse and remand, without reaching any other issue.

## FACTS

In the early morning hours of December 16, 2012, Anacortes Police Officer Jacqueline Richter saw Donald Jones driving on State Route 20, within

---

[1] 145 Wn. App. 646, 186 P.3d 1186 (2008).

the city limits of Anacortes, Washington. As she followed Jones in her patrol car for about a mile, she observed Jones's vehicle "pass over the fog line approximately an inch" three times, each time "correcting its position with a slow drift." She stopped Jones and told him that she had stopped his vehicle "due to erratic lane travel." There were no other vehicles on the roadway at the time. Jones agreed to perform field sobriety tests, which did not indicate intoxication.

Officer Sam King arrived to assist Richter. King saw a rifle in the backseat of Jones's truck. Jones consented to a vehicle search "for the sole purpose of recovering the rifle." A records check revealed that Jones did not have a valid driver's license. In the course of their conversation, Jones told King that he had a felony conviction in Idaho for possession of a controlled substance.

The State charged Jones with one count of unlawful possession of a firearm in the second degree.[2] Jones moved to suppress the fruits of the vehicle search. Citing Prado, Jones challenged the lawfulness of the stop. Because the State presented no evidence that Jones's three crossings of the fog line imperiled any other traffic or Jones or that Officer Richter recognized his driving as suggesting impairment, he claimed that the officer had no legal basis for the stop. Concluding that "there were more clear lane violations than those noted in

_____

[2] RCW 9.41.040(2)(a)(i).

-2-

the State v. Prado decision," the trial court denied Jones's motion. Jones waived his right to a jury trial. The court found Jones guilty as charged.

Jones appeals.

## STANDARD OF REVIEW

We review the denial of a motion to suppress by determining if substantial evidence supports the trial court's findings of fact and if those findings support the court's conclusions of law.[3] Evidence is substantial if it is sufficient to persuade a fair-minded, rational person that the finding is true.[4] This court reviews conclusions of law de novo.[5]

## ANALYSIS

Jones contends that the police lacked legal justification to stop him. The State contends that Officer Richter's observation of Jones's vehicle crossing the fog line three times provided this justification. For purposes of constitutional analysis, a traffic stop is a seizure.[6] The Fourth Amendment to the United States Constitution guaranty against unreasonable searches and seizures requires either a warrant or proof that the seizure qualifies under one of the few "'jealously

---

[3] State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001).
[4] State v. Reeder, 181 Wn. App. 897, 923-24, 337 P.3d 786, review granted, 337 P.3d 325 (2014).
[5] Ross, 106 Wn. App. at 880.
[6] State v. Doughty, 170 Wn.2d 57, 62, 239 P.3d 573 (2010) (citing State v. Ladson, 138 Wn.2d 343, 350, 979 P.2d 833 (1999)).

and carefully drawn'" exceptions to the warrant requirement.[7] Article I, section 7 of the Washington Constitution protects "private affairs" even more broadly and expressly requires legal authorization for any disturbance of those affairs.[8] The State has the burden to show that a particular warrantless search or seizure fits a recognized exception.[9] An officer may make a warrantless investigative stop based on a reasonable, articulable suspicion of unlawful conduct by a driver.[10] When reviewing the validity of an investigative stop, courts evaluate the totality of the circumstances.[11]

The State relies on RCW 46.61.140(1), which describes safe lane travel:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

---

[7] State v. Williams, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984) (internal quotation marks omitted) (quoting State v. Houser, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)).

[8] State v. Chacon Arreola, 176 Wn.2d 284, 292-94, 290 P.3d 983 (2012); WASH. CONST. art. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law.").

[9] Williams, 102 Wn.2d at 736 (citing Houser, 95 Wn.2d at 149).

[10] Chacon Arreola, 176 Wn.2d at 292-93; Ladson, 138 Wn.2d at 349-50; Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[11] Doughty, 170 Wn.2d at 62.

We interpreted this statute, and particularly the phrase "as nearly as practicable," for the first time in Prado. In that case, a police officer stopped a car that had crossed a lane divider line in an exit lane by approximately two tire widths for one second.[12] The State charged the driver with driving under the influence of an intoxicant. The district court denied Prado's motion to suppress, and Prado was convicted.[13]

On RALJ appeal, the superior court reversed, concluding that the language "as nearly as practicable" required an analysis of the totality of the circumstances, which did not justify a stop based on merely a "brief incursion across the white lane line with no erratic driving or safety problems."[14] We granted discretionary review and affirmed.[15]

Because Prado presented an issue of first impression in Washington, we looked to the decisions of courts in states with similar statutory language and found that they have consistently held that "minor incursions over a lane line" do not, by themselves, constitute a sufficient basis for an investigatory stop.[16] We agreed, concluding that Washington's statutory language "does not impose strict

---

[12] Prado, 145 Wn. App. at 647.
[13] Prado, 145 Wn. App. at 647.
[14] Prado, 145 Wn. App. at 647-48.
[15] Prado, 145 Wn. App. at 647-48.
[16] Prado, 145 Wn. App. at 648; see State v. Livingston, 206 Ariz. 145, 148, 75 P.3d 1103 (Ct. App. 2003); State v. Cerny, 28 S.W.3d 796, 800-01 (Tex. App. 2000); State v. Gullett, 78 Ohio App. 3d 138, 144-45, 604 N.E.2d 176 (1992).

liability" and "[a] vehicle crossing over a lane once for one second by two tire widths does not, without more, constitute a traffic violation justifying a stop by a police officer."[17]

The State argues that the facts in Jones's case are "substantially different" from Prado's—that while the "extreme brevity of the transgression" in Prado did not justify a traffic stop, Jones's three incursions over the fog line "suggested to [the officer] that the driver could be impaired. At that point she had a reasonable suspicion of criminal activity."

But our Prado decision did not depend on the fact that the driver crossed the lane line only once. Rather, we used a totality of the circumstances analysis that included factors such as other traffic present and the danger posed to other vehicles.[18] This represents a more sophisticated analysis than a simple tally of the number of times a tire crossed a line. The out-of-state cases we found persuasive included factual scenarios involving more than one incursion, which courts still found insufficient to justify a stop under statutes similar to Washington's.[19] We likewise held that "brief incursions"—not necessarily a single incursion—"will happen" and do not violate the lane travel statute.[20]

---

[17] Prado, 145 Wn. App. at 647.
[18] Prado, 145 Wn. App. at 649.
[19] Prado, 145 Wn. App. at 649; see Gullett, 78 Ohio App. 3d at 143-45 ("two incidents of crossing the edge line" held not to justify traffic stop where record showed no other traffic present and no speeding, erratic driving, or other

-6-

The State contends, "Officer Richter's stop of Mr. Jones' car was based on Officer Richter's suspicion that Mr. Jones was engaged in criminal activity and that suspicion was reasonable." The State relies on State v. McLean.[21] There, a Washington state trooper stopped a driver after observing him cross the fog line three times.[22] The arresting officer testified to his training and experience in identifying impaired drivers and the inferences he drew from his personal observations.[23] Division Two of this court concluded that because of "the articulable fact of this observation" and the trooper's training and experience identifying impaired drivers, "it was rational for [him] to infer that there was a substantial possibility that McLean was driving under the influence," which justified a warrantless stop.[24]

---

conduct to indicate driver was impaired); Cerny, 28 S.W.3d at 798-99, 801 ("no evidence that [driver's] actions were unsafe" where driver "'just barely'" swerved across center line and swerved "over" fog line "three or four times"; "evidence does not support" reasonable belief that driver violated lane travel statute); Livingston, 206 Ariz. at 148 (citing Rowe v. State, 363 Md. 424, 433-36, 769 A.2d 879 (2001) (momentarily crossing the shoulder line twice not a violation of Maryland statute requiring vehicle to stay within lane "'as nearly as practicable'" (quoting MD. CODE ANN. TRANSP. § 21-309(b)))); see also Crooks v. State, 710 So.2d 1041, 1042-43 (Fla. Dist. Ct. App.1998) (no violation where driver crossed edge line three times).

[20] Prado, 145 Wn. App. at 649.
[21] 178 Wn. App. 236, 313 P.3d 1181 (2013), review denied, 179 Wn.2d 1026 (2014).
[22] McLean, 178 Wn. App. at 241.
[23] McLean, 178 Wn. App. at 241-42.
[24] McLean, 178 Wn. App. at 245.

But McLean does not support the State's position. In McLean, the trooper saw the driver not only cross the fog line three times but also drive in the left lane without passing,[25] "weav[e] from side to side within the left lane," and discard a lit cigarette after the trooper activated his emergency lights.[26] The trooper, who testified about his training and experience in identifying impaired drivers, estimated that in one year he had stopped about 400 drivers for lane travel violations and made over 200 arrests for driving under the influence.[27] The trial court found that the trooper stopped McLean based on a reasonable suspicion that he was driving under the influence.[28]

Here, by contrast, the record does not support the State's contention that Richter stopped Jones because of a "reasonable suspicion of criminal activity." The State presented no evidence about Officer Richter's training and experience in identifying impaired drivers. Officer Richter did not testify that she suspected Jones was impaired or that she stopped him for this reason. The State presented no evidence of dangerous driving or any other traffic infraction. The

---

[25] See RCW 46.61.100(4) ("It is a traffic infraction to drive continuously in the left lane of a multilane roadway when it impedes the flow of other traffic.").

[26] McLean, 178 Wn. App. at 241.

[27] McLean, 178 Wn. App. at 240-41; see State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991) (totality of circumstances may include officer's training and experience).

[28] McLean, 178 Wn. App. at 243-44.

trial court did not find that Officer Richter stopped Jones because of a reasonable suspicion that he was driving under the influence.

Instead, when defense counsel asked if the trial court found that Jones's driving was unsafe, the court said no:

> What I'm finding is that there were no other vehicles at the time to be endangered. I suppose there's always a potential of unsafeness to him or others if the weaving were to continue and go on, but I want it clear he was not endangering anyone at the time the officer observed nor up to the time he was pulled over.

The trial court here found only that "there were more clear lane violations than those noted in the State v. Prado decision," which warranted a stop to investigate "why there was unsafe lane travel." And while the court stated that "[d]ue to the time of day, the time of year, driving is more potentially dangerous," it did not find that the conditions or weather made Jones's driving unsafe. As in Prado, Jones's driving did not violate RCW 46.61.140(1).[29]

Because the State failed to justify its warrantless seizure of Jones, the trial court should have suppressed the evidence discovered because of that seizure.[30] We reverse and remand. We need not reach Jones's sufficiency claim.

---

[29] Prado, 145 Wn. App. at 649.

[30] Ladson, 138 Wn.2d at 359; State v. Larson, 93 Wn.2d 638, 645-46, 611 P.2d 771 (1980) (citing Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

## CONCLUSION

Because the stop of Jones's vehicle was not lawful under RCW 46.61.040(1) and <u>State v. Prado</u>, the trial court erred by not suppressing the evidence of the firearm.  We reverse and remand.

_Leach, J._

WE CONCUR:

_Dwyer, J._

-10-