# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72967-5-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| J.W. (DOB: 7-22-97), | ) | UNPUBLISHED |
| Appellant. | ) | FILED: <u>November 16, 2015</u> |

Cox, J. – Under <u>Miranda v. Arizona</u>, the State may not use a defendant's confessions made during a custodial interrogation unless the defendant was informed of certain rights.[1] J.W. appeals the trial court's admission of her statements, arguing that she confessed during a custodial interrogation. Because J.W. was not in custody when she confessed, the court properly admitted her confession. Assuming the admission of her confession was erroneous, it was harmless beyond a reasonable doubt. We affirm.

J.W. and two other young women were seated at a table near a Safeway when police officers arrived to investigate a report of shoplifting. Officer Matthew Hurley arrived as J.W. gave Officer Chris Shone her name and birth date. Officer Hurley observed an open bag next to J.W. containing bottles of alcohol. Officer Hurley then asked J.W. to repeat her date of birth and age. Officer Hurley then stated "you do understand that you could be arrested at this point for being in

---

[1] 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

possession of alcohol as a minor."[2] J.W. then asked if she and Officer Hurley could step away from the table and talk. They walked a few feet away, and J.W. confessed to stealing the alcohol.

J.W. returned to the table where she, the other young women, and the officers waited for 15 to 20 minutes for another officer to return from Safeway. After the other officer returned and the officers spoke, Officer Hurley arrested J.W. and provided a CrR 3.1 warning regarding her right to an attorney. This was not a full Miranda warning.

J.W. moved to suppress her statements. The trial court held a CrR 3.5 suppression hearing, concluding that J.W. was in custody after Officer Hurley contacted her, but that there was no interrogation. The court's decision was based on J.W.'s age, the statement Officer Hurley made to her, and the fact that she was detained "for what a juvenile may have been [sic] considered an extended period of time."[3]

J.W. appeals. The State did not cross-appeal, but argues that this court may affirm on any basis supported by this record.[4]

## CUSTODIAL INTERROGATION

J.W. argues that her confession was inadmissible because she confessed during a custodial interrogation. We disagree.

---

[2] Report of Proceedings (December 2, 2014) at 43.

[3] Clerk's Papers at 48.

[4] State v. Kindsvogel, 149 Wn.2d 477, 481, 69 P.3d 870 (2003).

The State may not use a defendant's confessions made during a custodial interrogation unless the defendant was informed of certain rights.[5] We review the trial court's "denial of a motion to suppress by determining if substantial evidence supports the trial court's findings of fact and if those findings support the court's conclusions of law."[6] Determining whether a defendant is in custody is a mixed question of law and fact.[7] We "defer to the trial court's findings of fact but review its legal conclusions from those findings de novo."[8] Additionally, "unchallenged findings of facts and findings of fact supported by substantial evidence [are treated] as verities on appeal."[9] Constitutional harmless error analysis applies to erroneously admitted statements obtained in violation of Miranda.[10]

In Miranda v. Arizona, "the [United States] Supreme Court established a conclusive presumption that all confessions or admissions made during a custodial interrogation are compelled in violation of the Fifth Amendment's privilege against self-incrimination."[11] "[C]ustodial interrogation" is "questioning

---

[5] Miranda, 384 U.S. at 444.

[6] State v. Jones, 186 Wn. App. 786, 789, 347 P.3d 483 (2015); accord State v. Fuentes, 183 Wn.2d 149, 157, 352 P.3d 152 (2015).

[7] See In re Pers. Restraint of Cross, 180 Wn.2d 664, 681 n.7, 327 P.3d 660 (2014).

[8] Id. at 681.

[9] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

[10] State v. Nysta, 168 Wn. App. 30, 43, 275 P.3d 1162 (2012).

[11] Cross, 180 Wn.2d at 682.

3

initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[12]

"Under the federal and state constitutions, a juvenile possesses rights against self-incrimination."[13] If a juvenile is involved, we include the juvenile's age in the custody analysis as long as the officer knew of the juvenile's age, or the juvenile's age "would have been objectively apparent to a reasonable officer" at the time of questioning.[14] Although a juvenile's age is not a "determinative, or even a significant, factor in every case," it cannot be ignored.[15]

### Custody and _Terry_ Stops

The State argues that the court erred by determining that J.W. was in custody. Specifically, the State argues that she was not in custody because she was merely detained for an investigatory stop. We agree.

A person is in "custody" if he is "deprived of his freedom of action in any significant way."[16] We use an objective standard to determine whether an interrogation is custodial and ask "'whether a reasonable person in the individual's position would believe he or she was in police custody to a degree

---

[12] Miranda, 384 U.S. at 444.

[13] State v. S.J.W., 149 Wn. App. 912, 927, 206 P.3d 355 (2009), aff'd on other grounds, 170 Wn.2d 92, 239 P.3d 568 (2010).

[14] J.D.B. v. N. Carolina, 131 S. Ct. 2394, 2406, 180 L. Ed. 2d 310 (2011).

[15] Id.

[16] Miranda, 384 U.S. at 444.

associated with formal arrest.'"[17] We can also ask whether "a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'"[18]

Courts must also look at other relevant factors to determine whether an individual is in custody, including the location and duration of the questioning, the statements made during the questioning, "the presence or absence of physical restraints during the questioning," and the individual's release after questioning.[19] But "whether the police had probable cause to arrest" is "irrelevant" to the custody analysis.[20] The "'defendant must show some objective facts indicating his . . . freedom of movement [or action] was restricted [or curtailed].'"[21]

According to Terry v. Ohio,[22] officers are not required to warn suspects of their Miranda rights during investigatory stops.[23] A "'temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop does not

---

[17] S.J.W., 149 Wn. App. at 928 (quoting State v. Lorenz, 152 Wn.2d 22, 36-37, 93 P.3d 133 (2004)).

[18] Howes v. Fields, 132 S. Ct. 1181, 1189, 182 L. Ed. 2d 17 (2012) (alteration in original) (quoting Thompson v. Keohane, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995)); State v. Daniels, 160 Wn.2d 256, 266, 156 P.3d 905 (2007) (quoting Thompson, 516 U.S. at 112)).

[19] Howes, 132 S. Ct. at 1189 (citations omitted).

[20] Lorenz, 152 Wn.2d at 37.

[21] Id. (quoting State v. Post, 118 Wn.2d 596, 607, 826 P.2d 172, 837 P.2d 599 (1992)).

[22] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[23] See State v. Heritage, 152 Wn.2d 210, 218, 95 P.3d 345 (2004).

constitute <u>Miranda</u> custody.'"[24] An officer may "briefly detain a person for questioning if the officer has reasonable suspicion that the person stopped is or is about to be engaged in criminal activity."[25] Officers may also briefly stop an individual "'if necessary to maintain the status quo while obtaining more information.'"[26] Thus, a suspect is not in custody during an investigatory <u>Terry</u> stop where the police question the suspect "'to confirm or dispel [their] suspicions.'"[27] But the suspect "is not oblig[ated] to respond."[28]

A "<u>Terry</u> stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'"[29] But "'[t]he scope of an investigatory stop . . . may be enlarged or prolonged . . . if the stop confirms or arouses further suspicions.'"[30]

---

[24] <u>Howes</u>, 132 S. Ct. at 1190 (quoting <u>Maryland v. Shatzer</u>, 559 U.S. 98, 113, 130 S. Ct. 1213, 1224, 175 L. Ed. 2d 1045 (2010)).

[25] <u>Fuentes</u>, 183 Wn.2d at 158.

[26] <u>State v. Duncan</u>, 146 Wn.2d 166, 172, 43 P.3d 513 (2002) (quoting <u>State v. Miller</u>, 91 Wn. App 181, 184, 955 P.2d 810, 961 P.2d 973 (1998)).

[27] <u>State v. Marcum</u>, 149 Wn. App. 894, 910, 205 P.3d 969 (2009) (quoting <u>Heritage</u>, 152 Wn.2d at 218).

[28] <u>State v. Walton</u>, 67 Wn. App. 127, 130, 834 P.2d 624 (1992) (quoting <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)).

[29] <u>State v. Saggers</u>, 182 Wn. App. 832, 839 n.14, 332 P.3d 1034 (2014) (quoting <u>Terry</u>, 392 U.S. at 20)).

[30] <u>State v. Smith</u>, 115 Wn.2d 775, 785, 801 P.2d 975 (1990) (alteration in original) (quoting <u>State v. Guzman–Cuellar</u>, 47 Wn. App. 326, 332, 734 P.2d 966 (1987)).

State v. Heritage is instructive.[31] There, the 16-year-old defendant and other juveniles sat in a park when security officers approached them.[32] The security officers smelled marijuana, asked the group to identify the owner of the marijuana pipe, and the defendant admitted ownership.[33]

The supreme court discussed the custody requirements and compared them to a traffic stop and a Terry stop.[34] The court stated that a routine traffic stop, like a Terry stop, "is a seizure" for Fourth Amendment purposes because it "curtails the freedom of a motorist such that a reasonable person would not feel free to leave the scene."[35] But the court "recognized that because both traffic stops and routine Terry stops are brief, and they occur in public, they are 'substantially less police dominated' than the police interrogations contemplated by Miranda."[36]

The court also stated that "a detaining officer may ask a moderate number of questions during a Terry stop to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the suspect 'in

---

[31] 152 Wn.2d 210, 95 P.3d 345 (2004).

[32] Id. at 212.

[33] Id. at 213.

[34] Id. at 217-18.

[35] Id. at 218.

[36] Id. (internal quotation marks omitted) (quoting Berkemer, 468 U.S. at 439).

custody'" for <u>Miranda</u> purposes.[37] Thus, routine <u>Terry</u> stops are not custodial for <u>Miranda</u> purposes.[38]

The court then determined that the defendant was not in custody because the "encounter was analogous to a <u>Terry</u> stop."[39] Specifically, the court determined that the questioning occurred publicly, that the defendant was never physically restrained or isolated from her friends, and that the security officers assured her that they could not arrest her.[40] The court also found that the security officers asked questions which related to their suspicions.[41] Lastly, the court determined that the defendant's age did not make the encounter custodial, and that a 16 year old would not have reasonably "believed she was detained to a degree analogous to arrest."[42]

<u>State v. Walton</u>[43] is also instructive. There, Officer Leslie Gitts responded to a juvenile party and spoke with Jeffrey Walton, a 17-year-old.[44] Officer Gitts detected alcohol on Walton's breath and requested his identification, which

---

[37] <u>Id.</u> at 218-19.

[38] <u>Id.</u> at 218.

[39] <u>Id.</u> at 219.

[40] <u>Id.</u>

[41] <u>Id.</u>

[42] <u>Id.</u>

[43] 67 Wn. App. 127, 130, 834 P.2d 624 (1992).

[44] <u>Id.</u> at 128.

revealed his age.[45] After Officer Gitts asked Walton if he had anything to drink, Walton responded that he had.[46]

At the hearing, Officer Gitts stated that he had been "pretty sure" Walton had violated the statute but was still investigating.[47] He also stated that he "probably would have arrested Walton had he attempted to leave."[48] Walton argued that his statement to Officer Gitts was the product of a custodial interrogation.[49]

This court stated that "unlike a formal arrest, a typical Terry stop is not inherently coercive because the detention is presumptively temporary and brief, is relatively less 'police dominated,' and does not easily lend itself to deceptive interrogation tactics."[50] This court determined that the officer "acted in a noncoercive, routine investigatory manner" and asked a question "in the course of a typical Terry stop."[51] This court also determined that there was no evidence that the officer informed Walton of his plan to arrest him if he attempted to leave.[52] Accordingly, this court concluded that the "uncommunicated plan could

---

[45] Id.

[46] Id.

[47] Id. at 128,

[48] Id.

[49] Id.

[50] Id. at 130 (quoting Berkemer, 468 U.S. at 439).

[51] Id. at 130-31.

[52] Id. at 130.

not lead Walton, as a reasonable person, to believe that he was under arrest and in custody."[53]

Here, J.W. was not in custody to the degree associated with arrest when she confessed to Officer Hurley. Officer Shone first arrived and questioned the young women. He asked if they had been to Safeway and obtained their identification information. Officer Hurley then arrived and asked J.W. to repeat her date of birth and age. He then told her that she could be arrested for possessing alcohol as a minor. She was arrested 15 to 20 minutes later.

These facts are similar to the facts in Heritage in that the young women were stopped briefly, allowing the officers to determine their identity and ask questions to "confirm or dispel" their shoplifting suspicions.[54] J.W. was questioned publicly, was not physically restrained, and was not initially isolated from the other young women. She was also not told she was under arrest. These circumstances demonstrate that she was detained while the officers investigated "whether a crime ha[d] been committed."[55] Thus, J.W. was subjected to a Terry stop and was not in custody at the time of her statements.

The trial court determined that J.W. was "detained for what a juvenile may have been considered an extended period of time."[56] But "'[t]he scope of an

---

[53] Id.

[54] Heritage, 152 Wn.2d at 219.

[55] State v. Mecham, 181 Wn. App. 932, 943, 331 P.3d 80, review granted, 337 P.3d 325 (2014).

[56] Clerk's Papers at 48.

investigatory stop . . . may be enlarged or prolonged . . . if the stop confirms or arouses further suspicions.'"[57] The 15 to 20 minutes that the officers and J.W. waited "'prolonged'" the Terry stop while another officer determined if there was probable cause to make arrests.[58] These facts demonstrate that the officers briefly detained J.W. during a Terry stop "'to maintain the status quo'" while another officer established whether there was probable cause to make arrests.[59]

Similarly to Walton, Officers Hurley and Shone testified that they were present to make sure the young women did not leave. Although the officers stood by to ensure that J.W. did not leave, there is no evidence that they communicated their purpose to her. According to Walton, this "uncommunicated plan could not lead [J.W.], as a reasonable person, to believe that [s]he was under arrest and in custody."[60]

Thus, J.W. did not demonstrate "'objective facts indicating [her] . . . freedom of movement [or action] was restricted [or curtailed].'"[61] Accordingly, J.W. was not in custody at the time of her statements.

---

[57] Smith, 115 Wn.2d at 785 (alteration in original) (quoting Guzman–Cuellar, 47 Wn. App. at 332)).

[58] Id. (alteration in original) (quoting Guzman–Cuellar, 47 Wn. App. at 332); Clerk's Papers at 48.

[59] Duncan, 146 Wn.2d at 172 (quoting Miller, 91 Wn. App at 184).

[60] See Walton, 67 Wn. App. at 130.

[61] Lorenz, 152 Wn.2d at 37 (some alterations in original) (quoting Post, 118 Wn.2d at 607).

*Interrogation*

J.W. argues that Officer Hurley's statement was the functional equivalent of interrogation and had no other purpose but to "to elicit an admission." The State disagrees, arguing there was no interrogation. Because J.W. was not in custody at the time of her statements, whether she was interrogated is not material to the Miranda analysis. Accordingly, we need not address that question.

*Harmless Error*

The State argues that in any event, an erroneous admission of J.W.'s statement was harmless error beyond a reasonable doubt. We agree.

"Constitutional error is presumed to be prejudicial, and the State bears the burden of proving that the error was harmless."[62] "Constitutional errors are harmless if the untainted evidence is so overwhelming that it necessarily leads to the same outcome."[63] "Under the 'overwhelming untainted evidence' test, we look only at the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt."[64] Thus, we will reverse a conviction "where there is any reasonable chance that the use of inadmissible evidence was necessary to reach a guilty verdict."[65]

---

[62] Nysta, 168 Wn. App. at 43; accord Cross, 180 Wn.2d at 681.

[63] Cross, 180 Wn.2d at 688.

[64] Nysta, 168 Wn. App. at 43.

[65] Id.

Here, even if the trial court erred in admitting J.W.'s confession, the error was harmless beyond a reasonable doubt. That is because other overwhelming "untainted evidence" was presented, allowing the trial court to reach "the same outcome."[66] First, store cameras recorded J.W. in Safeway with a cart containing a bag. J.W. was also recorded taking liquor bottles off the shelves and placing them into the cart. The cameras also recorded her leaving with a large bag, without paying.

Second, a Safeway manager testified that she saw J.W. meet the other young women outside the Safeway with a bag. The manager watched them sit at the table outside Safeway and remove the items from their bags. The manager also testified that none of the young women went through the check stand to pay for the items before leaving the store. Additionally, Officer Hurley saw liquor bottles in the bag next to J.W., prompting his question to her. Officer Shone also saw the bags and Safeway merchandise on the table.

"Taken together, the evidence of [J.W.'s] guilt is so overwhelming that the [trial court] necessarily would have reached the same conclusion even in the absence of [her] confession."[67] Thus, any error in admitting J.W.'s confession was harmless beyond a reasonable doubt.

---

[66] Cross, 180 Wn.2d at 688.

[67] State v. Mayer, No. 90846-0, 2015 WL 6388248, at *11 (Wash. Oct. 22, 2015).

13

*Other Assignments of Error*

J.W. assigns error to two of the court's finding without making any argument. First, she assigns error to the court's finding that Officer Hurley did not ask her to speak about the incident. J.W. also assigns error to the court's finding that she asked Officer Hurley if she could speak to him about the incident. Because there are no citations to authority or arguments for these assignments of error, we need not further consider them.[68]

We affirm the trial court's denial of J.W.'s motion to suppress, the adjudication, and the disposition.

Cox, J.

WE CONCUR:

---

[68] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(6).