# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53522-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CASHUNDO SCOTT BANKS, aka CASHUNDO S. BANKS DONALD EUGENE IRVING | |
| Appellant. | |

MAXA, J. – Cashundo Banks appeals his conviction of first degree unlawful possession of a firearm and unlawful possession of a controlled substance – methamphetamine and the imposition of a legal financial obligation (LFO).

The conviction arose from an incident in which a police officer approached Banks to make sure he was okay because he was asleep in a car parked in a Safeway parking lot with the engine running. After confirming that Banks did not need assistance, the officer asked Banks for his name and identification. The officer then conducted a records check, learned that there was an outstanding warrant for Banks's arrest, and discovered that he had possession of a firearm and methamphetamine. Banks filed a motion to suppress the firearm and the methamphetamine on the grounds that he was unlawfully seized when the officer asked him for identification. The trial court denied the motion.

We hold that (1) the trial court did not err when it denied Banks's motion to suppress because the officer's request for identification did not constitute a seizure under the totality of the circumstances; (2) under existing law, treating possession of a controlled substance as a strict liability offense that does not require knowing possession does not violate due process; and (3) the case should be remanded for the trial court to consider imposition of community custody supervision fees as determined by the Department of Corrections (DOC) as a legal financial obligation (LFO). Accordingly, we affirm Banks's convictions, but we remand for the trial court to consider the imposition of supervision fees.

FACTS

*Officer's Encounter with Banks*

On February 7, 2019, officers Hannah Bush and Aaron Lucas responded separately to a grocery store in Tacoma regarding unwanted individuals who were in front of the store. During the contact, a security guard asked Bush to check on a car parked in the store parking lot. The security guard stated that a man – later identified as Banks – was asleep in the car, the engine was running, and the car had been there for several hours.

Bush approached the vehicle by foot. Another officer, Deanna Ramos-Campos, also was present, but the trial court could not determine her location. Banks was in the driver's seat with his eyes closed, apparently asleep. Bush knocked on the driver's side window and identified herself as a police officer. It took a few knocks for Banks to respond, and then he opened his eyes. Bush illuminated her uniform with her flashlight.

Using a normal tone of voice, Bush asked Banks to roll down his window and then motioned for him to roll down the window. Bush did not order or demand that Banks roll down his window. Bush's weapon was not drawn and she did not have her hand on her weapon.

Bush asked Banks if he was okay and said that security had told her that he had been parked in his car for a while. Banks said that he was okay and that he was waiting for someone. Bush also asked, "Hey, can I get your name so I know who I'm talking to?" Report of Proceedings (RP) (May 23, 2019) at 14. Banks provided his name. Bush also asked Banks for identification, but he was unable to provide any. She used a normal tone of voice when she asked Banks for his name and did not demand or order him to provide identification. The tone was conversational with no hostility.

Bush used the information that Banks provided to run a records check while Banks remained seated in his car. She did not retain Banks's license or any identifying documents. Bush learned that Banks had an outstanding felony warrant and a suspended driver's license. She then requested backup from Lucas, who approached on foot.

Bush asked Banks to step out of the vehicle. Banks informed Bush and Lucas that he had a firearm in his waistband, which Lucas removed. Banks also asked the officers to retrieve a brown bag from his vehicle. When Lucas transported Banks to jail, he searched the bag and discovered a substance that later was identified as methamphetamine.

During the encounter, there were no patrol cars blocking Banks's ability to drive away and none of the patrol vehicles had their emergency lights activated. It is unclear where Ramos-Campos's car was parked, but the trial court found that it likely was not blocking Banks's car.

The State charged Banks with first degree unlawful possession of a firearm and unlawful possession of a controlled substance – methamphetamine.

*CrR 3.6 Hearing*

Banks filed a motion to suppress evidence of the firearm, methamphetamine, and his statements regarding the items, arguing that they all were obtained unlawfully through a

3

warrantless seizure. The trial court denied the motion. The court entered extensive findings stating the facts summarized above. The court concluded that Bush checked on Banks and asked him for identification as part of her community caretaking function. The court further concluded that a seizure did not occur until Banks was asked to get out of the vehicle, and by that time Bush had learned of the outstanding warrant and therefore the seizure was lawful.

*Bench Trial and Sentencing*

After a bench trial, the trial court found Banks guilty of first degree unlawful possession of a firearm and unlawful possession of a controlled substance. At sentencing, the trial court stated that it would impose the $500 crime victim penalty assessment but would not impose the $100 DNA collection fee. The court then stated, "It does appear that [Banks] is indigent. I won't impose any other legal/financial obligations." RP (June 28, 2019) at 125. However, the judgment and sentence imposed supervision fees as determined by DOC as a condition of community custody.

Banks appeals the trial court's denial of his suppression motion and the imposition of supervision fees.

ANALYSIS

A. WARRANTLESS SEIZURE

Banks argues that Bush unlawfully seized him when she asked for identification, and therefore the trial court erred in denying his CrR 3.6 motion to suppress the evidence discovered after the seizure. We disagree.

1.   Standard of Review

When reviewing a denial of a motion to suppress evidence, we determine whether substantial evidence supports the trial court's findings of fact and review de novo the trial court's

conclusions of law based on those findings. *State v. Tysyachuk*, 13 Wn. App. 2d 35, 42, 461 P.3d 403 (2020). Evidence is substantial when it can persuade a fair-minded person of the truth of the stated premise. *Id.* We treat unchallenged findings of fact as verities on appeal. *Id.*

2.    Legal Principles

Article I, section 7 of the Washington Constitution states, "No person shall be disturbed in his private affairs . . . without authority of law." However, article I, section 7 does not prohibit all interactions between law enforcement officers and private persons. *See State v. Harrington*, 167 Wn.2d 656, 664-65, 222 P.3d 92 (2009); *State v. Johnson*, 8 Wn. App. 2d 728, 736, 440 P.3d 1032 (2019). Whether a law enforcement officer's encounter with a person violates article I, section 7 depends on whether a "seizure" has occurred. *See Harrington*, 167 Wn.2d at 663.

Under article I, section 7, a seizure occurs when " 'considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority.' " *Id.* at 663 (quoting *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004)). "The relevant question is whether a reasonable person in the individual's position would feel he or she was being detained." *Harrington*, 167 Wn.2d at 663. This determination is made by looking at the officer's actions using an objective standard. *Id.*

The court in *Harrington* noted a nonexclusive list of actions that likely would result in a seizure: " 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Id.* at 664 (internal quotation marks omitted) (quoting *State v. Young*, 135 Wn.2d 498, 512, 957 P.2d 681 (1998)).

" 'In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.' " *Harrington*, 167 Wn.2d at 664 (internal quotation marks omitted) (quoting *Young*, 135 Wn.2d at 512).

The person claiming an unconstitutional seizure bears the burden of proving that a seizure occurred. *Harrington*, 167 Wn.2d at 664.

3.    Challenged Findings of Fact

Banks assigns error to three findings of fact:

> 2.  During this contact, . . . store security came up and asked Officer Bush to check on a vehicle which was parked on the left side of the parking lot, backed in, and not in a legal parking spot. . . .
> . . . .
>
> 9.  Officer Bush testified that she requested identifying information so she would know who she was talking to.  The driver was still seated in the vehicle at this time.  Bush used a normal tone of voice when asking the driver for his name and did not demand or order him to provide identification.
>
> 10.  The defendant voluntarily provided his name to Bush.  During this time, the contact with the driver was completely conversational with no hostility.

Clerk's Papers at 24-26.

Regarding finding of fact 2, Banks argues that the person who requested that Bush check Banks's car was a private security guard, not a store security guard.  Banks is correct, but this fact is immaterial to this appeal and therefore is of no legal consequence.  *State v. Coleman*, 6 Wn. App. 2d 507, 510, 516, 431 P.3d 514 (2018).

Regarding finding of fact 9, Banks does not explain why substantial evidence does not support this finding.  There is no indication in the record that Bush "demanded" or "ordered" Banks to provide identification.  Bush testified that she casually asked for Banks's name in a

normal tone of voice. She then asked him for identification. Bush never yelled, and the tone was conversational without hostility.

Regarding finding of fact 10, Banks argues that substantial evidence does not support the finding that he "voluntarily" provided his name. He emphasizes that no reasonable person would feel free to say nothing in this situation. However, there is no evidence that Bush somehow compelled Banks against his will to provide his name. Bush testified that she asked Banks for his name and he provided it voluntarily. She stated that he was cooperative.

We conclude that substantial evidence supports the three challenged findings of fact. The remaining unchallenged findings are verities. *Tysyachuk*, 13 Wn. App. 2d at 42.

4. Request for Identification

The issue here is whether Bush unlawfully seized Banks when she asked him for his name and identification. The Supreme Court repeatedly has stated the rule that "a police officer's conduct in engaging a defendant in conversation in a public place and *asking for identification* does not, alone, raise the encounter to an investigative detention." *State v. Armenta,* 134 Wn.2d 1, 11, 948 P.2d 1280 (1997) (emphasis added). This statement was quoted in *Young*, 135 Wn.2d at 511; *State v. O'Neill*, 148 Wn.2d 564, 580, 62 P.3d 489 (2003); and *Harrington*, 167 Wn.2d at 665.

The court in *O'Neill* also confirmed that no seizure occurs when an officer questions a person who is sitting in the driver's seat of a vehicle. 148 Wn.2d at 570, 579. The court stated that "no unreasonable intrusion by police occurs when an officer approaches the driver of an automobile parked in a public parking lot and engages him or her in conversation." *Id.* at 579.

However, a request for identification can rise to the level of a seizure based on the extent of any "show of authority" by the officer. *Id.* at 577. The court in *O'Neill* explained:

7

"Where an officer *commands* a person to halt or demands information from the person, a seizure occurs. But no seizure occurs where an officer approaches an individual in public and *requests* to talk to him or her, engages in conversation, or *requests* identification, so long as the person involved need not answer and may walk away."

*Id.* at 577-78 (quoting *State v. Cormier*, 100 Wn. App. 457, 460-61, 997 P.2d 950 (2000)).

Here, Bush simply asked Banks if he was okay and asked him for identification. There was no show of authority or any command or demand that Banks respond. The trial court made unchallenged findings or findings supported by substantial evidence that Bush (1) approached Banks's car on foot, (2) did not draw or have her hand on her weapon, (3) used a normal tone of voice when trying to get Banks's attention, (4) did not order or demand that Banks roll down his window, (5) used a normal tone of voice when asking Banks for his name, (6) did not demand or order Banks to provide identification, and (7) used a conversational tone with no hostility. The court also found that the officers' patrol cars were not parked in a manner that would have prevented Banks from leaving.

Banks cites to a number of cases in which the court found seizures when officers asked for identification. But these cases involved facts not present here and are distinguishable. *See*, *e.g.*, *Harrington*, 167 Wn.2d at 665-70 (officer requested that defendant keep his hands out of his pockets and requested to frisk him while another officer arrived and stood by); *Johnson*, 8 Wn. App 2d at 742-45 (two officers stood at the driver and passenger doors of defendant's vehicle and created the impression that they were conducting an ongoing investigation concerning the vehicle); *State v. Carriero*, 8 Wn. App. 2d 641, 659-62, 439 P.3d 679 (2019) (two police vehicles approached a car in a narrow, dead end alley and parked their cars in a way that blocked any exit, and other factors were present); *State v. Beito*, 147 Wn. App. 504, 507, 510, 195 P.3d

1023 (2008) (officer stood outside the defendant's door, preventing him from exiting, and said no when the defendant asked to leave).

Based on the totality of the circumstances, Bush's request for identification did not amount to a show of authority that would make Banks believe that he was not free to leave or to decline Bush's request. As a result, we conclude that Bush's request for identification from Banks did not constitute a seizure and hold that the trial court did not err in denying Banks's suppression motion.

5.    Exceeding the Scope of the Encounter

Banks argues that his encounter with Bush became a seizure because she exceeded the scope of the community caretaking function. He claims that once Bush found out that he was okay, her community caretaking function ended and she had no justification for requesting identification.

However, the community caretaking function is an exception to the warrant requirement. *State v. Boisselle*, 194 Wn.2d 1, 10, 448 P.3d 19 (2019). But no warrant is required if there is no seizure. Because the request for identification was not a seizure, there is no need to determine whether Bush's action was justified by the community caretaking function exception to the warrant requirement.[1]  Therefore, we reject this argument.

B.    POSSESSION OF A CONTROLLED SUBSTANCE

Banks argues that treating unlawful possession of a controlled substance as a strict liability crime violates the presumption of innocence and due process. We disagree.

---

[1] Contrary to Banks's discussion of *Beito*, the court in that case did not address whether the interaction between the police officers and the defendant had exceeded the scope of the community caretaking function. *Beito*, 147 Wn. App. at 508-10.

1.  Existing Law

RCW 69.50.4013(1) states, "It is unlawful for any person to possess a controlled substance." In *State v. Cleppe*, the Supreme Court relied on legislative history to conclude that the legislature did not intend to impose a mens rea element for an earlier version of RCW 69.50.4013. 96 Wn.2d 373, 378-80, 635 P.2d 435 (1981). In *State v. Bradshaw*, the Supreme Court confirmed that the unlawful possession statute does not have a mens rea element. 152 Wn.2d 528, 532-35, 98 P.3d 1190 (2004). And the court refused to imply such an element. *Id.* at 535-37.

The court in *Bradshaw* also summarily rejected an argument that in the absence of a mens rea element, the unlawful possession statute violated due process. *Id.* at 539. The court noted that the defendant "offer[ed] little analysis to support any of their constitutional arguments" and quoted the Court of Appeals's statement that the defendant had not cited any authority showing how the statute violated due process. *Id.*

Banks argues that the Supreme Court's interpretation of the predecessor to RCW 69.50.4013(1) is wrong. But *Bradshaw* remains good law, and we are bound by its holding until the Supreme Court holds otherwise. *State v. Jussila*, 197 Wn. App. 908, 931, 392 P.3d 1108 (2017).

2.  Due Process Claim

In *State v. A.M.*, the defendant argued that the unwitting possession defense to unlawful possession was an unconstitutional burden-shifting scheme that violated her due process rights. 194 Wn.2d 33, 36, 448 P.3d 35 (2019). The court declined to address the due process argument after reversing on other grounds. *Id.* at 44. However, Justice Gordon McCloud's concurring opinion (joined by Justice Gonzalez) disagreed with the majority's decision to not revisit the

current strict liability interpretation of RCW 69.50.4013. *Id.* at 45. After an extensive analysis, the concurring opinion concluded that the legislature acted beyond its authority and violated due process in making unlawful possession of a controlled substance a strict liability offense. *Id.* at 49-53.

Banks relies on the analysis in the concurring opinion in *A.M.* to argue that interpreting wrongful possession as a strict liability offense violates due process. He also highlights the fact that Washington is the only state in the country that has a strict liability drug possession law, and argues that this fact shows that RCW 69.50.4013 violates due process.

However, *Bradshaw* rejected a due process argument, albeit without much analysis. 152 Wn.2d at 539. We remain bound by *Bradshaw* until the Supreme Court holds otherwise. *Jussila*, 197 Wn. App. at 931.[2]

### 3. No Finding Regarding Knowing Possession

Banks argues that the trial court erred when it failed to find that he *knowingly* possessed methamphetamine. But as stated above, knowledge is not an essential element of RCW 69.50.4013. *Bradshaw*, 152 Wn.2d at 532-35. Therefore, the court's failure to make a finding on knowledge was not erroneous. *See* RCW 69.50.4013(1).

### C. COMMUNITY CUSTODY SUPERVISION FEES

Banks argues that the trial court erred in imposing community supervision fees as an LFO despite finding that he was indigent. We conclude that the record is unclear whether the trial court intended to impose supervision fees.

---

[2] The Supreme Court granted review and has heard oral argument in a case that may address this issue. *State v. Blake*, 194 Wn.2d 1023, 456 P.3d 395 (2020). However, the court has not yet issued an opinion in *Blake*.

Initially, the State argues that Banks is precluded from challenging the imposition of supervision fees because he is raising the objection for the first time on appeal. There is no explanation for Banks's failure to object in the trial court to the imposition of supervision fees. Defense counsel had an obligation here to raise the issue so the trial court could clarify whether it intended to impose supervision fees. Our inclination is to decline to consider Banks's challenge to the imposition of supervision fees.

However, under *State v. Blazina*, we may exercise our discretion under RAP 2.5(a) to consider an indigent defendant's ability to pay LFOs. 182 Wn.2d 827, 834-36, 344 P.3d 680 (2015). The Supreme Court repeatedly has signaled that we should exercise our discretion to address LFO issues. *See State v. Lee*, 188 Wn.2d 473, 501-02, 396 P.3d 316 (2017). Therefore, we consider whether the trial court intended to impose supervision fees.

RCW 9.94A.703(2)(d) states that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the department." Because supervision fees are waivable by the trial court, they are considered discretionary LFOS. *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). However, supervision fees are not "costs" under RCW 10.01.160(3), and therefore they can be imposed even if the defendant is indigent. *Id.*

Here, the judgment and sentence section regarding community custody imposed supervision fees as determined by DOC as a condition of community custody. However, at sentencing the trial court stated, "It does appear that [Banks] is indigent. I won't impose any other legal/financial obligations." RP (June 28, 2019) at 125. This statement is inconsistent with the imposition of supervision fees.

12

No. 53522-0-II

The record is unclear whether the trial court intended to impose supervision fees. Accordingly, we remand for the trial court to consider in its discretion whether to impose supervision fees.

CONCLUSION

We affirm Banks's convictions, but we remand for the trial court to consider imposition of supervision fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

MAXA, J.

We concur:

_____

SUTTON, A.C.J.

_____

CRUSER, J.

13