# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52448-1-II |
| Respondent. | |
| vs. | PART PUBLISHED OPINION |
| ARTUR VENIAMIN TYSYACHUK, | |
| Appellant. | |

MAXA, C.J. – Artur Tysyachuk appeals his conviction of felony driving under the influence (DUI), first degree driving while suspended or revoked, and failure to have an ignition interlock. The convictions arose from a traffic stop that a Washington State Patrol trooper initiated after observing Tysyachuk making jerky movements when driving, crossing the lane divider line to the right and causing another vehicle to change lanes, and then crossing the fog line to his left.

In the published portion of this opinion, we hold that (1) the trooper had a reasonable suspicion that Tysyachuk had engaged in criminal activity or a traffic infraction that justified his stop of Tysyachuk's car, and (2) the trial court did not abuse its discretion in denying Tysyachuk's motion to bifurcate the trial into two phases: one to determine whether he committed DUI and a second to determine whether he had the required prior DUI offenses to elevate his offense to a felony. In the unpublished portion, we hold that the trial court did not

abuse its discretion in admitting the results of a blood alcohol test performed after Tysyachuk's arrest. Accordingly we affirm Tysyachuk's convictions.

FACTS

At 1:40 AM on December 31, 2017, Washington State Patrol trooper Nicholas Smith was driving northbound on Interstate 5 near the Tacoma Dome when he noticed a car driving in the far left lane that was making some "jerking movements." Report of Proceedings (RP) (June 4, 2018) at 34. Smith observed the right two tires of the car cross over the lane divider to the right and saw a vehicle in the adjoining lane slow down and move away into the next lane. The car then braked and moved back into the left lane and crossed over the solid fog line on the left that separated the roadway from the shoulder. Smith then decided to stop the car because the driver was not driving safely. And he believed the swerving – failure to maintain straight travel in a lane – was consistent with possible driving under the influence.

The driver, later identified as Tysyachuk, showed signs of intoxication so Smith asked him to perform field sobriety tests. Tysyachuk refused. Smith placed Tysyachuk under arrest and transported him to the hospital for a blood draw to test his blood-alcohol concentration. Tests showed a result of 0.20 grams of ethanol per 100 milliliters, which is over twice the legal limit. Because Tysyachuk had three or more prior DUI convictions, the State charged Tysyachuk with felony driving under the influence, first degree driving while in revoked status, and failure to have an ignition interlock.

*Motion to Suppress*

Tysyachuk filed a motion to suppress all the evidence arising from the traffic stop and to dismiss the charges, claiming in part that the officer lacked probable cause to stop his car. At the hearing on this motion, Smith testified about his observations as recited above. Smith also

testified about his DUI training and extensive experience as a trooper in conducting several hundred traffic stops involving DUI investigations, about 150 of which resulted in DUI arrests.

In addition, the court admitted video footage from Smith's dashboard camera. The video footage showed Tysyachuk's car crossing the lane divider to the right, approximately a car length in front of a vehicle in the right lane. That vehicle signaled and moved to the far right lane as Tysyachuk moved back into his lane, braked, and then crossed the fog line to the left. Smith then activated his lights and siren.

The trial court denied the motion to suppress based on the lawfulness of the traffic stop. The court entered the following findings:

> Trooper Smith was especially well trained and experienced in the detection and investigation of impaired driving cases.

Clerk's Papers (CP) at 120.

> The court had an opportunity to view the footage from the dashboard mounted camera in Trooper Smith's vehicle, which was admitted as an exhibit at this hearing. The footage appeared to be a fair and accurate depiction of the events in this case and strongly corroborated the testimony of Trooper Smith.

CP at 120-21.

> Trooper Smith testified he saw the defendant's Cadillac Deville in the far left lane making several jerky, unsafe lane maneuvers which brought the Cadillac out of its lane and into the lane to the right.

CP at 123.

> The Court finds Trooper Smith's testimony about the defendant['s] jerky, unsafe lane maneuvers to be credible. The Court finds the defendant's vehicle was swerving inside and outside of its lane, and when the defendant's vehicle left its lane it nearly caused a collision with a vehicle traveling in the neighboring lane. One vehicle in the neighboring lane slowed and merged to the right to avoid the defendant's unsafe driving.

CP at 123-24.

The trial court concluded that Smith's traffic stop of Tysyachuk's car was lawful:

The defendant's driving behaviors (weaving in and out of his lane, causing other vehicles to take evasive action to avoid him) provided a reasonable articulable suspicion that criminal activity and/or traffic infractions had occurred, and thus Trooper Smith was justified in initiating a traffic stop of the defendant's vehicle. It was appropriate and reasonable for Trooper Smith to conduct a traffic detention to investigate why the defendant's driving was substandard.

CP at 125.

*Motion to Bifurcate*

Tysyachuk filed a motion to bifurcate his trial so that the jury would hear evidence of his prior DUI offenses – which elevated his offense to a felony – only if it rendered a guilty verdict on the DUI charge. He argued that the evidence of his prior offenses could cause the jury to believe that he had a propensity to commit DUI. The trial court denied the motion, stating, "I am not going to bifurcate the trial, but I'm more than happy to figure out some other compromise so that you don't have -- sort of depends on what the defense wants to do. But I don't believe it's appropriate to bifurcate, given the case law." 1 RP at 20.

Tysyachuk then asked for an alternative: allowing Tysyachuk to stipulate to the prior convictions but not have the stipulation read until the jury made a determination on his guilt on the DUI. The trial court denied this request.

Ultimately, Tysyachuk stipulated that he "had been previously convicted of three or more prior offenses as defined by RCW 46.61.5055 . . . within ten years of his arrest." CP at 243. The court included the stipulation in a jury instruction that was given with the jury instructions on the current DUI offense.

The jury returned guilty verdicts on all charges. Tysyachuk appeals his convictions.

4

ANALYSIS

A.   LAWFULNESS OF THE TRAFFIC STOP

Tysyachuk argues that the trial court erred in denying his motion to suppress the evidence arising from Smith's traffic stop because Smith did not have a reasonable suspicion that he was engaging in criminal conduct or committing a traffic infraction. We disagree.

1.   Standard of Review

In evaluating a denial of a motion to suppress evidence, we review the trial court's findings of fact for substantial evidence and review de novo the trial court's conclusions of law based on those findings. *State v. Fuentes*, 183 Wn.2d 149, 157, 352 P.3d 152 (2015). Evidence is substantial if it is enough to persuade a fair-minded person of the truth of the stated premise. *State v. Froehlich*, 197 Wn. App. 831, 837, 391 P.3d 559 (2017). Unchallenged findings are treated as verities on appeal. *State v. Betancourth*, 190 Wn.2d 357, 363, 413 P.3d 566 (2018).

In making a substantial evidence determination for a motion to suppress, we defer to the trial court's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *See State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (general substantial evidence rule); *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994) (motion to suppress).

2.   Legal Principles

a.   Traffic Stop Justification

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a law enforcement officer generally cannot seize a person without a warrant. *Fuentes*, 183 Wn.2d at 157-58. If a warrantless seizure occurs, the State has the burden of showing that it falls within one of the carefully drawn exceptions to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015).

One established exception is a brief investigative detention of a person, known as a *Terry*[1] stop. *Id.* Warrantless traffic stops are lawful under this exception if the officer had "at least a reasonable articulable suspicion of either criminal activity or a traffic infraction." *State v. Chacon Arreola*, 176 Wn.2d 284, 292-93, 290 P.3d 983 (2012). The suspicion must be based on specific and articulable facts. *Z.U.E.*, 183 Wn.2d at 617. If an officer did not have a reasonable suspicion, a detention is unlawful and evidence discovered during the detention must be suppressed. *Fuentes*, 183 Wn.2d at 158.

We determine the lawfulness of an investigative stop based on the "totality of the circumstances." *Id.* "The totality of circumstances includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty." *Id.* The focus is on what the officer knew at the inception of the stop. *Id.*

An officer can rely on his or her experience to identify seemingly innocent facts as suspicious. *State v. Moreno*, 173 Wn. App. 479, 492, 294 P.3d 812 (2013). Facts that appear innocuous to an average person may appear suspicious to an officer in light of past experience. *Id.* at 493. And "officers do not need to rule out all possibilities of innocent behavior before they make a stop." *Fuentes*, 183 Wn.2d at 163.

Whether a warrantless investigative stop was justified or represents a constitutional violation is a question of law that we review de novo. *State v. Bailey*, 154 Wn. App. 295, 299, 224 P.3d 852 (2010).

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

b.  Applicable Cases

The parties rely on three cases that address the circumstances under which a driver

crossing a lane divider or fog line gives rise to a reasonable suspicion of criminal activity or a

traffic infraction sufficient to justify an investigative traffic stop.

In *State v. Prado*, a police officer stopped Prado after observing his vehicle cross by

approximately two tire widths for one second an eight-inch wide line dividing the exit lane from

the adjacent lane.  145 Wn. App. 646, 647, 186 P.3d 1186 (2008).  Division One of this court

noted that RCW 46.61.140(1) required a vehicle to stay within a single lane "as nearly as

practicable."  *Prado*, 145 Wn. App. at 648.   The court believed that this language demonstrated

the legislature's recognition that "brief incursions over the lane lines will happen."  *Id.* at 649.

The court concluded, "A vehicle crossing over the line for one second by two tire widths on an

exit lane does not justify a belief that the vehicle was operated unlawfully."  *Id.*  However, the

court also noted that "there was no other traffic present and no danger posed to other vehicles."

*Id.*  Because this brief incursion over the line was the sole basis for the officer's stop, the court

held that the stop was illegal.  *Id.*

In *State v. McLean*, a trooper observed the defendant weave from side to side within the

left lane of travel and then cross the fog line three times.  178 Wn. App. 236, 241, 313 P.3d 1181

(2013).  The trooper suspected the driver was impaired and initiated a traffic stop.  *Id.*  The

trooper testified that he had training and experience in identifying impaired drivers.  *Id.* at 240.

He estimated that he had made over 200 arrests for driving under the influence.  *Id.*

This court held that the stop was lawful because the trooper had a reasonable suspicion

that the driver was under the influence.  *Id.* at 245.  The court stated,

> From the articulable fact of [the trooper's] observation, and from his training and
> experience identifying driving under the influence, it was rational for [the trooper]

to infer that there was a substantial possibility that Mclean was driving under the influence. That substantial possibility establishes a reasonable suspicion permitting [the trooper] to make a warrantless traffic stop.

*Id.*

In *State v. Jones*, a police officer stopped Jones after observing his vehicle pass over the fog line about an inch three times, each time correcting its travel with a slow drift. 186 Wn. App. 786, 788, 347 P.3d 483 (2015). There were no other vehicles on the road at the time. *Id.* A police officer initiated a traffic stop because of erratic lane travel. *Id.* Division One held that the traffic stop was unlawful even though the vehicle crossed the fog line three times instead of only once as in *Prado*. *Id.* at 791-94. The court concluded that the record did not support a finding that the officer made the traffic stop based on a reasonable suspicion of criminal activity. *Id.* at 793. The court explained its decision in *Prado*:

> [O]ur *Prado* decision did not depend on the fact that the driver crossed the lane line only once. Rather, we used a totality of the circumstances analysis that included factors such as other traffic present and the danger posed to other vehicles. This represents a more sophisticated analysis than a simple tally of the number of times a tire crossed a line.

*Id.* at 791-92.

The court also distinguished *McLean* based on the evidence in that case that the trooper had extensive training and experience identifying impaired drivers and the trial court's finding that the trooper made the stop based on a reasonable suspicion that the driver was under the influence. *Jones*, 186 Wn. App. at 793. By contrast, in *Jones* there was no evidence about the officer's training and experience in identifying impaired drivers, the officer did not testify that she suspected the driver was impaired, and there was no evidence of dangerous driving. *Id.* In addition, the trial court did not find that the officer stopped the driver because of a reasonable suspicion that he was driving under the influence. *Id.*

3.    Substantial Evidence

Tysyachuk initially argues that substantial evidence did not support the trial court's findings of fact underlying the court's conclusion that the traffic stop was lawful.  We disagree.

First, Tysyachuk challenges the trial court's finding that "the defendant's vehicle was swerving inside and outside of its lane, and when the defendant's vehicle left its lane it nearly caused a collision with a vehicle traveling in the neighboring lane.  One vehicle in the neighboring lane slowed and merged to the right to avoid the defendant's unsafe driving."  CP at 123-24.  He claims that the evidence showed only that the car crossed the divider line to the right and then crossed the fog line to the left.

However, Smith expressly testified that Tysyachuk's car caught his attention because he noticed the driver making some "jerking movements," RP (June 4, 2018) at 34, and the trial court found that testimony credible.  And Smith also referred to Tysyachuk's driving as "swerving."  RP (June 4, 2018) at 9.

> Q.  And in your training and experience was the driving that you observed of the Cadillac DeVille consistent with possible driving under the influence?
>
> A.  Yes.  Swerving is what it's commonly referred to as, not being able to maintain a straight travel of pathway in a lane.  It's one of the known clues taught to us at the academy.

RP (June 4, 2018) at 9.

In addition, the trial court's finding was based on its own review of the video footage. The court interpreted Tysyachuk's movements as swerving, and we defer to that interpretation. And it was undisputed that Tysyachuk crossed the lines on both sides of his lane.  We conclude that substantial evidence supported the trial court's finding that Tysyachuk was swerving inside and outside of his lane.

Second, Tysyachuk challenges the trial court's finding that the dashboard camera footage corroborated Smith's testimony. He claims that Smith's testimony and the video footage did not establish that he almost caused a collision. He contends that the evidence shows that there was no danger of a collision and that the car in the next lane simply slowed down and moved to the right as a precaution.

However, Smith testified that the other car altered its path because of Tysyachuk's driving: "I observed another car slow down and merge away from the DeVille because of the unsafe lane travel." RP (June 4, 2018) at 8. The trial court reviewed the video footage and apparently inferred that a collision might have occurred if the other car had not changed lanes. Once again, we defer to the trial court's interpretation of the evidence. We conclude that substantial evidence supported the trial court's finding that Tysyachuk's driving nearly caused a collision.

4.    Totality of Circumstances Analysis

The ultimate question here is whether the trial court's factual findings support its legal conclusion that Tysyachuk's driving provided Smith with a reasonable suspicion that criminal activity or a traffic infraction had occurred and therefore that the traffic stop of Tysyachuk's car was lawful. We conclude that the findings support this conclusion.

Tysyachuk argues that *Prado*, *Jones*, and cases from other jurisdictions establish that his driving did not create a reasonable suspicion to justify the traffic stop. But we conclude that this case is more similar to *McLean* and is distinguishable from *Prado* and *Jones*.

First, as in *McLean*, Smith testified to and the trial court made an unchallenged finding regarding Smith's extensive training and experience in recognizing impaired driving. Smith testified that based on his training and experience, he believed that Tysyachuk's driving was

10

consistent with driving under the influence. This court in *McLean* found similar evidence significant in establishing a reasonable suspicion. 178 Wn. App. at 245. As noted above, facts that appear innocuous to an average person may appear suspicious to an officer in light of past experience. *Moreno*, 173 Wn. App. at 493. By contrast, the court in *Jones* emphasized that there was no evidence in that case regarding the officer's training and experience. *Jones*, 186 Wn. App. at 793.

Second, in *McLean* the trooper observed the driver "weave within its lane" in addition to crossing the fog line three times. 178 Wn. App. at 245. And this court concluded that based on the trooper's experience, it was reasonable for him to infer that the driver was under the influence. *Id.* Similarly, Smith observed Tysyachuk's car making jerking movements and swerving and determined that Tysyachuk's driving was consistent with driving under the influence. Therefore, as in *McLean*, it was reasonable for Smith to infer that Tysyachuk was driving under the influence. By contrast, in *Jones* the officer did not testify that she suspected that the driver was impaired. 186 Wn. App. at 793.

Third, the trial court found that Tysyachuk's unsafe driving affected another driver, causing that driver to change lanes to avoid a possible collision. By contrast, the court in *Prado* emphasized that "there was no other traffic present and no danger posed to other vehicles." 145 Wn. App. at 649. In *Jones*, the court noted that "[t]here were no other vehicles on the roadway at the time." 186 Wn. App. at 788. And the court in *Jones* expressly recognized that the totality of circumstances analysis included "factors such as other traffic present and the danger posed to other vehicles."

We evaluate the reasonableness of Smith's suspicion that Tysyachuk was engaged in criminal activity or a traffic violation based on the totality of the circumstances. *Fuentes*, 183

11

Wn.2d at 158. Here, the totality of the circumstances included the nature of Tysyachuk's driving, Smith's training and experience regarding the detection of impaired driving and his conclusion that Tysyachuk's driving was consistent with impairment, and the fact that Tysyachuk potentially posed a danger to another driver. Based on these circumstances, we conclude that Smith had a reasonable suspicion that Tysyachuk was engaged in criminal activity or a traffic violation.

Accordingly, we hold that the trial court did nor err in concluding that Smith's traffic stop of Tysyachuk was lawful.

B.      PROPOSED BIFURCATION OF TRIAL

Tysyachuk argues that the trial court erred in denying his motion to bifurcate the trial so the jury would only learn of his prior DUI offenses after it found him guilty of the charged offense. We disagree.

We review a trial court's decision on whether to bifurcate a trial for an abuse of discretion. *State v. Roswell*, 165 Wn.2d 186, 192, 196 P.3d 705 (2008). A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. *State v. Monschke*, 133 Wn. App. 313, 335, 135 P.3d 966 (2006).

Under RCW 46.61.502(6), a person is guilty of the offense of *felony* DUI if he or she "has three or more prior offenses within ten years as defined by RCW 46.61.5055." Prior convictions that raise the level of a crime are an essential element of the charged crime that the State must prove beyond a reasonable doubt. *Roswell*, 165 Wn.2d at 189.

Tysyachuk proposed that his trial be bifurcated into two phases: one phase for the jury to render a verdict on his DUI charge and, if he was convicted of DUI, a second phase for the jury to decide whether he had three or more prior DUI offenses. Under this proposal, no evidence regarding the prior offenses would be presented in the first phase.

In *Roswell*, the court addressed a similar bifurcation proposal in a sex offense case where a prior offense would elevate the crime to a felony. *Id*. at 189-90. The defendant proposed that the jury would determine whether he had committed the charged crime and the judge would determine the prior conviction element. *Id.* at 190. The court declined to approve this procedure. *Id.* at 189. The court expressly rejected the argument that a defendant has a right to a bifurcated trial when prior convictions are an essential element of the charged crime. *Id.* at 197-98.

The court acknowledged that a defendant may stipulate to the fact that he or she had a prior conviction. *Id.* at 195 (citing *Old Chief v. United States*, 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)). But the court noted that the defendant cannot stipulate to the prior conviction element and have that element completely removed from the jury's consideration. *Roswell*, 165 Wn.2d at 195.

The court in *Roswell* distinguished *State v. Oster*, 147 Wn.2d 141, 52 P.3d 26 (2002), which held that giving a to-convict instruction that did not include the prior conviction element and a separate special verdict form to address the prior conviction element was constitutionally permissible. *Roswell*, 165 Wn.2d at 197. The court in *Roswell* stated, "[W]e certainly did not suggest [in *Oster*] that defendants have a right to waive their right to a trial by jury on certain elements so as to prevent the jury from hearing prejudicial evidence. Courts have long held that when a prior conviction is an element of the crime charged, it is not error to allow the jury to hear evidence on that issue." *Id.*

The court stated that "[w]ithin the parameters we have laid out, trial courts may exercise their sound discretion to reduce unnecessary prejudice where practical." *Id.* at 198. One allowable procedure is to use separate jury instructions as in *Oster*. *Id.* Another procedure the

court suggested is to allow the defendant to "stipulate to the prior conviction element but the trial court could inform the jury of the element by utilizing statutory citations rather than the name of the crime." *Id.* at 198 n.6.

Roswell controls here. The court in *Roswell* declined to approve a bifurcation similar to Tysyachuk's proposed bifurcation, where the State would be prevented from presenting the evidence necessary to prove an essential element of the crime and the jury would be prevented from considering such evidence. *Id.* at 189, 197-98. Because the existence of Tysyachuk's prior offenses was an element of the charged crime, the trial court did not abuse its discretion in denying the motion to bifurcate and allowing the jury to hear evidence of prior offenses when deciding whether to convict him of that charged crime. *See id.* at 197.

Tysyachuk cites *State v. Wu*, 6 Wn. App. 2d 679, 431 P.3d 1070 (2018), *aff'd*, 194 Wn.2d 880, 453 P.3d 975 (2019), where the trial court allowed the type of bifurcation he proposed. He claims that the trial court here erred by not exercising its discretion to allow a similar procedure.[2]

However, *Roswell* is clear that a defendant does not have the *right* to a bifurcated trial. 165 Wn.2d at 197-98. The trial court here applied a procedure the court in *Roswell* expressly approved to reduce prejudice – using the statutory citation when instructing the jury on Tysyachuk's stipulation to prior offenses. *Id.* at 198 n.6. We conclude that applying this procedure was a proper exercise of the trial court's discretion.[3]

---

[2] We note that neither the Court of Appeals nor the Supreme Court in *Wu* addressed the propriety of the bifurcation procedure the trial court used. We need not address whether this procedure is consistent with *Roswell*.

[3] Tysyachuk also contends that the trial court failed to recognize that it had the discretion to allow his proposed bifurcation. But the trial court concluded that it was not appropriate to bifurcate, not that it was precluded from bifurcating.

We hold that the trial court did not abuse its discretion in denying Tysyachuk's motion for a bifurcated trial.

CONCLUSION

We affirm Tysyachuk's convictions.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished portion of this opinion, we address and reject Tysyachuk's remaining argument. We hold that the trial court did not abuse its discretion in admitting the results of a blood alcohol test performed after Tysyachuk's arrest.

ADDITIONAL FACTS

At trial, Smith testified that he took Tysyachuk to a hospital for a blood draw. He testified that he knew William Davis, the employee that drew Tysyachuk's blood, having worked with him several times in the past. Smith testified that he attended the blood draw and provided the vials for the blood draw after checking that the seals on the vials were still intact, and that the vials contained anticoagulant powder and had not expired. He observed Davis wipe the draw area on Tysyachuk's arm with iodine after Smith verified that it did not contain alcohol. Smith testified that he observed the needle puncturing the skin, observed the blood go into the vials, and observed Davis attach the identifying information to the vial. Davis then mixed the blood and anticoagulant powder by turning the vials over.

Davis did not testify at trial. Instead, his supervisor testified that Davis was a certified phlebotomist, licensed to draw blood in Washington. He testified that Davis was trained to

follow the hospital protocols for criminal investigations and that he had no doubt that Davis followed these protocols in this case.

Rebecca Flaherty testified that she was the certified toxicologist that tested the blood samples at the State Toxicology lab. Tysyachuk objected to Flaherty testifying to the results of the testing, arguing that there was insufficient evidence about how the blood draw was performed to establish a foundation for admissibility. The trial court overruled the objection. Flaherty then testified that the samples showed a result of 0.20 grams of ethanol per 100 milliliters, which is over twice the legal limit.

## ANALYSIS

Tysyachuk argues that the trial court erred in admitting the results of the blood-alcohol test because the State did not lay a proper foundation for admissibility. We disagree.

We review a trial court's ruling on the admissibility of blood test evidence for an abuse of discretion. *State v. Brown*, 145 Wn. App. 62, 69, 184 P.3d 1284 (2008). The trial court abuses its discretion when it admits blood test evidence when there is insufficient prima facie evidence that the blood draw and blood analysis was performed properly. *Id.* at 69-70. Tysyachuk has the burden of showing an abuse of discretion. *Id.* at 69.

The court in *Brown* adopted the definition of prima facie evidence in RCW 46.61.506(4)(b), a section in the driving under the influence statute: "[E]vidence of sufficient circumstances that would support a logical and reasonable inference of the facts sought to be proved." 145 Wn. App. at 69. The court further stated, "To determine the sufficiency of the evidence of foundational facts, the court must assume the truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State." *Id.* (citing RCW

46.61.506(4)(b)). "Once a prima facie showing is made, it is for the jury to determine the weight to be attached to the evidence." *Brown*, 145 Wn. App. at 70.

Tysyachuk claims that the State did not present sufficient evidence regarding the blood draw procedures because Davis, the person who drew the blood, did not testify. However, Smith testified in detail about how Davis collected Tysyachuk's blood. Smith confirmed that there were no abnormalities regarding how the blood sample was collected. In addition, Davis's supervisor testified that (1) Davis was a certified phlebotomist licensed to draw blood in Washington; and (2) Davis was trained to follow the hospital protocols for criminal investigations.

Even though Davis did not testify, the evidence presented was sufficient to make a prima facie showing that the blood draw was performed properly. We hold that the trial court did not abuse its discretion in allowing the test results to be admitted into evidence.

CONCLUSION

We affirm Tysyachuk's convictions.

MAXA, J.

We concur:

SUTTON, A.C.J.

GLASGOW, J.

17