# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54120-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DONALD GEORGE IV, | |
| Appellant. | |

MAXA, P.J. – Donald George IV appeals his convictions of second degree unlawful possession of a firearm, possession of a stolen firearm, second degree identity theft, and unlawful possession of a controlled substance. The convictions arose from an incident in which, during a traffic stop, George jumped out of a moving vehicle and ran away. Based on a brief glimpse of the fleeing passenger, the deputy making the traffic stop believed that George was a different individual who had an outstanding felony warrant. After apprehending George, the deputy learned that he was mistaken. However, he found a gun, multiple credit cards, mail, and a bag of pills on the ground where George had fallen.

We hold that (1) the trial court did not err in denying George's motion to suppress because the deputy had a reasonable, articulable suspicion that the fleeing passenger was the person subject to a warrant, (2) the trial court did not err in limiting George's cross-examination of the deputy because the judge's exclusion of his testimony in an earlier case was not

necessarily based on a finding that he was being untruthful, (3) there was sufficient evidence to support the identity theft conviction because the evidence supported a reasonable inference that George intended to commit a crime with the financial information he possessed, (4) George's conviction of unlawful possession of a controlled substance must be vacated under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), and (5) George's SAG claims have been addressed by his appellate counsel and they have no merit.

Accordingly, we affirm George's convictions of second degree unlawful possession of a firearm, possession of a stolen firearm, and second degree identity theft, but we reverse his conviction of unlawful possession of a controlled substance and remand for the trial court to vacate that conviction and for resentencing.

## FACTS

*The Incident*

In March 2018, Kristie Lopez-Hopkins returned home from work to discover that her home had been burglarized. Among other things, she was missing a portable, locked gun safe. The safe had contained a loaded handgun, a number of credit cards in her name and her former husband's name, and a letter addressed to her that contained a credit card PIN number and the last four digits of an account number.

On the same day that Lopez-Hopkins's home had been burglarized, Pierce County Sheriff's Deputy Seth Huber activated his emergency lights to stop a car that had turned without signaling properly. As the vehicle was coming to a stop but still was moving, a passenger later identified as George jumped out of the car and started running away.

Huber got a brief glimpse of the fleeing passenger's face for approximately one second from 30 to 40 feet away. He believed that this person was someone that he was familiar with,

John Ironnecklace, who had an outstanding felony warrant. Huber had contacted and arrested Ironnecklace many times and was 100 percent sure that the person was Ironnecklace. And Huber was actively looking for Ironnecklace because of the warrant.

Huber stopped his vehicle and chased after George while identifying himself as a police officer and ordering George to stop and get on the ground. George refused to obey Huber's commands and continued to run away. Huber had closed the gap on George when he observed George reach into his jacket pocket for a gun. George lost his footing and fell to the ground. Huber fell on top of him. The chase lasted approximately four seconds and covered 50 to 60 feet. At that point, Huber still believed that the person he was chasing was Ironnecklace and he called him "Johnny" while they were on the ground.

George pushed up and back against Huber and threw a handgun about five to six feet away. Huber eventually subdued him and placed him into handcuffs. While taking George back to his police vehicle, Huber realized that he was not Ironnecklace.

Huber retrieved the loaded handgun from where George had thrown it. He also found 10 credit cards not in George's name, a letter not addressed to George that stated a credit card PIN number and the last four digits of an account number, and a bag of pills where George and Huber landed on the ground. The credit cards and mail belonged to Lopez-Hopkins and her former husband.

The State charged George with second degree unlawful possession of a firearm, unlawful possession of a controlled substance, first degree burglary, possession of a stolen firearm, and second degree identity theft.

*CrR 3.6 Hearing*

George filed a motion to suppress all items discovered as a result of his seizure and detention. At the CrR 3.6 hearing, Huber testified about the events that occurred on the day of the incident and his strong belief that he was pursuing Ironnecklace, not George.

Huber testified that Ironnecklace was a 44-year-old man with tattoos on his neck. George was a 26-year-old man and had no visible tattoos. According to Huber, both Ironnecklace and George had similar hair color, hair style, and skin tone. Both men were Native American. Huber noted that George was a drug addict, which can cause a person to look older than his or her actual age.

The State also introduced George's booking photos from the day of the seizure and arrest and Ironnecklace's booking photos from five weeks earlier. Huber testified that Ironnecklace's booking photos accurately reflected what Ironnecklace looked like and who he believed he was pursuing on the day of the incident. The trial court found that George and Ironnecklace appeared quite similar.

The trial court found Huber's testimony to be credible, denied George's motion to suppress, and entered findings of fact and conclusions of law. The court concluded that George was seized for purposes of a *Terry*[1] stop at the point where Huber identified himself as a police officer and ordered George to stop and to get on the ground. The court also concluded that under the circumstances, Huber's belief that he was pursuing Ironnecklace was reasonable and rose to the level of reasonable suspicion. The court emphasized that Huber had to make a split second decision whether to chase the fleeing passenger, and he did not have time to "study his face, ears, hair, or tattoos, or to take any action from his vantage point to confirm his suspected

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

identification." Clerk's Papers at 39. As a result, the court concluded that Huber conducted a lawful *Terry* stop based on his mistaken belief that the person was Ironnecklace.

The court further determined that after Huber realized that George was not Ironnecklace, the *Terry* seizure remained justified to investigate George's flight and the various items recovered at the scene.

*Jury Trial*

The State filed a motion in limine to exclude evidence regarding an unrelated case in 2014, in which the judge granted a motion to suppress Huber's testimony. In the 2014 case, Huber made inconsistent statements regarding a traffic stop that he conducted. Although the judge excluded the testimony, she did not make a formal finding that Huber was not credible. George sought to introduce the 2014 judge's ruling to impeach Huber and to attack his credibility. The trial court reserved ruling on the State's motion after it discussed in depth why the evidence likely could not be introduced for impeachment purposes. The court stated that it would reconsider the issue if Huber's credibility was brought into question.

At trial, Huber and Lopez-Hopkins testified to the events as described above. George did not testify.

Both Huber's attorney and George's attorney asked Huber questions about inconsistencies relating to whether he or another officer who arrived at the scene actually located and recovered the credit cards, mail, and bag of pills. Huber stated that he found the items, while the other officer's police report stated that the other officer found them.

The State conceded that there was insufficient evidence to support the burglary charge and the trial court dismissed that charge. The jury convicted George of second degree unlawful

possession of a firearm, possession of a stolen firearm, second degree identity theft, and unlawful possession of a controlled substance.

The court determined that George's offender score was 9+, based on multiple prior felony convictions and three current felony convictions. One of the prior convictions was for attempted unlawful possession of a controlled substance. The court sentenced George to the bottom of the standard range on possession of a firearm and possession of a stolen firearm convictions, to run consecutively, the bottom of the standard range on the possession of a controlled substance conviction, and the top of the standard range on the possession of a controlled substance and identity theft convictions.

George appeals his convictions.

## ANALYSIS

A.    MOTION TO SUPPRESS

George argues that the trial court should have granted his motion to suppress because it was unreasonable to seize him based on a fleeting, distant glimpse of his face absent any other facts or circumstances to support Huber's belief that George was Ironnecklace. We disagree.

1.    Standard of Review

When evaluating a denial of a motion to suppress evidence, we determine whether substantial evidence supports the trial court's findings of fact and review de novo the trial court's conclusions of law based on those findings. *State v. Tysyachuk*, 13 Wn. App. 2d 35, 42, 461 P.3d 403 (2020). Evidence is substantial when it can persuade a fair-minded person of the truth of the stated premise. *Id.* Unchallenged findings of fact are treated as verities on appeal. *Id.*

In making a substantial evidence determination for a motion to suppress, we defer to the trial court's evaluation of the persuasiveness of the evidence and resolution of any conflicting testimony. *Id.*

2.    Legal Principles

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution protect a person from warrantless seizures. *Tysyachuk*, 13 Wn. App. 2d at 43.  If a law enforcement officer seizes a person without a warrant, the State bears the burden of showing that the warrantless seizure falls within one of the carefully drawn exceptions to the warrant requirement. *Id.*

One established exception is a brief investigative detention of a person, also known as a *Terry* stop. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017).  Under this exception, an officer may briefly detain a person for questioning without a warrant if the officer has a reasonable suspicion based on specific and articulable facts that the person has been or is about to be engaged in criminal activity. *Id.*

We look at the totality of the circumstances to determine the lawfulness of an investigative stop. *Tysyachuk*, 13 Wn. App. 2d at 43.  This includes looking at the officer's professional training and experience, the location of the stop, the conduct of the suspect detained, the officer's purpose of the stop, and the extent of physical intrusion on the suspect's liberty. *Id.* The focus of the analysis is on what the officer knew at the inception of the stop. *Id.* Whether an officer had justification for a warrantless investigative stop or if the stop was unconstitutional is a question of law that we review de novo. *Tysyachuk*, 13 Wn. App. 2d at 44.

In *State v. Smith*, the Supreme Court addressed the arrest of a person who officers thought was subject to an arrest warrant but turned out to be someone else.  102 Wn.2d 449, 451-

52, 688 P.2d 146 (1984). The court stated, "Where the warrant is constitutionally valid, the seizure of an individual other than the one against whom the warrant is outstanding is valid if the arresting officer (1) acts in good faith, and (2) has reasonable, articulable grounds to believe that the suspect is the intended arrestee." *Id.* at 453-54. When there is doubt about the correct identity of the subject of the warrant, the officer must make immediate reasonable efforts to discover whether the warrant applied to the detained person. *Id.* at 454.

In *Smith*, officers were on the lookout for a person described as a 16-year-old brown-haired white male who was 5 feet 10 inches tall and weighed 145 pounds and had distinctive tattoos on his hands. *Id.* at 451. Officers saw a young person who met this general description, detained him, and searched him. *Id.* Only after the search did they check his hands and realize that he did not have the described tattoos, and they eventually determined that he was not the intended arrestee. *Id.* at 452.

The court emphasized that the mere fact that the seized person matches a general physical description of the person subject to the arrest warrant does not meet the standard of reasonable, articulable grounds to believe that the suspect is the intended arrestee. *Id.* at 454. The court determined that the arrest was unlawful in part because the fact that both the suspect and the intended arrestee were white males with brown hair and similar heights and weights was not sufficient. *Id.* at 454-55. The court also noted that the officers made no attempt to verify the specific information about the intended arrestee's tattoos before they made the arrest. *Id.* at 454.

3.    Analysis

George argues that this case is like *Smith* because the only fact supporting Huber's belief that George was Ironnecklace was that they fit the same general description. He claims that the

facts of this case are even weaker than in *Smith* because although both George and Ironnecklace were Native American, George was 20 years younger and had no tattoos.

However, three key facts distinguish this case from *Smith*. First, Huber did not pursue an individual who merely matched a general description of an unknown person who was subject to an arrest warrant. He personally knew Ironnecklace and knew what Ironnecklace looked like. Based on that knowledge, he was 100 percent sure that the fleeing passenger was Ironnecklace. And in fact, the trial court made an unchallenged finding that the day of the incident George and Ironnecklace looked quite similar.

Second, unlike in *Smith*, Huber did not have time to verify whether or not the fleeing passenger really was Ironnecklace. As the trial court pointed out, Huber had to make a split second decision whether to pursue the passenger who he believed had a warrant for his arrest.

Third, here the passenger attempted to run away in response to a routine traffic stop. Flight is one factor to consider when determining whether reasonable suspicion existed. *State v. Howerton*, 187 Wn. App. 357, 375, 348 P.3d 781 (2015). And although flight alone may not be sufficient to detain someone, the passenger's actions provided at least some corroboration that the person was Ironnecklace and that he was fleeing because he was subject to an arrest warrant.

In addition, there is no question here that Huber acted in good faith, the first requirement in *Smith*. The trial court made an unchallenged finding that Huber was 100 percent sure that the fleeing person was Ironnecklace, and Huber even called the person by Ironnecklace's first name when he apprehended him.

We conclude that under the totality of the circumstances, Huber had a reasonable, articulable suspicion that the fleeing passenger was Ironnecklace. The fact that he made a good

faith mistake does not invalidate the detention.  Therefore, we hold that the trial court did not err in denying his suppression motion.

B.      EXCLUSION OF IMPEACHMENT EVIDENCE

George argues that he was deprived of his ability to present a defense because the trial court excluded evidence regarding the exclusion of Huber's testimony in a prior case where a traffic stop had led to an arrest.  We disagree.

1.      Legal Principles

The confrontation clause of the Sixth Amendment and article I, section 22 guarantee the right of a criminal defendant to present a defense and specifically to confront adverse witnesses through cross-examination.  *State v. Lile*, 188 Wn.2d 766, 781-82, 398 P.3d 1052 (2017).  But a criminal defendant does not have an absolute right of cross-examination.  *Id.* at 782.  This right is "limited by general considerations of relevance."  *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).  A criminal defendant does not have a constitutional right to present irrelevant evidence.  *State v. Orn*, 197 Wn.2d 343, 352, 482 P.3d 913 (2021).

When evaluating if the excluded evidence violates the defendant's constitutional right to present a defense, we weigh the State's interest in excluding evidence against the defendant's need for the information sought to be admitted.  *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019).

Under ER 401, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Irrelevant evidence is not admissible.  ER 402.

Under ER 608(b), a party may – at the trial court's discretion – cross-examine a witness regarding a specific instance of the witness's prior conduct if the conduct is probative of the

witness's truthfulness or untruthfulness. When exercising its discretion under ER 608(b), " 'the trial court may consider whether the instance of misconduct is relevant to the witness' veracity on the stand and whether it is germane or relevant to the issues presented at trial.' " *Lile*, 188 Wn.2d at 783 (quoting *State v. O'Connor*, 155 Wn.2d 335, 349, 119 P.3d 806 (2005)).

We review a trial court's evidentiary rulings for abuse of discretion. *Arndt*, 194 Wn.2d at 797. This standard also applies to a trial court's limitation on the scope of cross-examination. *State v. Lee*, 188 Wn.2d 473, 486, 396 P.3d 316 (2017). An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or is based on untenable grounds or reason. *Id.* However, we review de novo whether an evidentiary ruling violated the defendant's right to present a defense. *Arndt*, 194 Wn.2d at 797-98.

"Violations of the rights to present a defense and to confront adverse witnesses at trial are subject to constitutional harmless error review." *Orn*, 197 Wn.2d at 359. Under this standard, the State must prove beyond a reasonable doubt that the verdict would have been the same without the error. *Id.*

2.   Analysis

At trial, George sought to introduce evidence regarding an unrelated case from 2014 in which the judge granted a motion to suppress Huber's testimony based on factual discrepancies concerning a traffic stop that he conducted. George stated that he planned to ask Huber a general question regarding whether or not his credibility ever before had been questioned by a judge.

In the 2014 motion to suppress, the judge found that Huber's testimony about the driver and the traffic stop had inconsistencies. The judge stated that she had concerns about his credibility based on these inconsistent statements in his testimony. But the judge never made a specific finding that Huber was not credible or that there was any government misconduct. And

11

there was no determination whether Huber lied in his previous testimony or whether he simply had faulty memory about the circumstances surrounding that specific traffic stop.

As a result, the judge's 2014 ruling to suppress Huber's testimony was not necessarily probative of Huber's truthfulness as required under ER 608(b). Inconsistent statements alone do not support the conclusion that Huber was being untruthful.

George relies on *State v. York*, 28 Wn. App. 33, 621 P.2d 784 (1980). In that case, the court held that the trial court erred by preventing the defendant from attacking the credibility of an undercover investigator with unfavorable evidence of his previous undercover employment from which he later was dismissed. *Id.* at 37. The court stated that the trial court's error was prejudicial because credibility was "the very essence of the defense" and "[t]he prosecution's ability to argue there was nothing negative in [the witness's] background may have been the single factor which caused the jury to believe him rather than the other witnesses." *Id.* at 35-36.

George argues that the trial court erred when it excluded the evidence relating to Huber's prior testimony in 2014 because Huber was the most important witness who testified against him and that he could only attack Huber's credibility with the excluded evidence. But here, the proffered evidence had limited impeachment value because as stated above, exclusion of Huber's previous testimony did not necessarily reflect untruthfulness. Because of the ambiguous nature of the 2014 proceeding, we conclude that the trial court's exclusion of this evidence was not an abuse of discretion because the evidence was irrelevant under ER 402 and was not probative of truthfulness under ER 608(b).

The question then is whether the State's interest in excluding inadmissible evidence is outweighed by George's need for the excluded evidence. *Arndt*, 194 Wn.2d at 812. In *Arndt*, the court found no violation of the right to present a defense when the defendant "was able to

present relevant evidence supporting her central defense theory." *Id.* at 814. The situation here is similar. George was able to cross-examine Huber about the alleged inconsistencies regarding who actually discovered the credit cards, mail, and drugs. Specifically, George had the opportunity to highlight the fact that Huber believed that he picked up the credit cards, mail, and bag of pills from the ground, while the police report showed that another officer potentially picked them up instead. This examination supported George's theory that Huber's testimony about what he found after detaining George was not credible.

Accordingly, we hold that the trial court did not err when it excluded evidence of Huber's previous testimony in an unrelated case.

C.      SUFFICIENCY OF EVIDENCE – IDENTITY THEFT

George argues that the State failed to prove that he had the intent to commit second degree identity theft because the evidence showed only that he had possession of Lopez-Hopkins's credit cards and related mail. We disagree.

1.      Standard of Review

When evaluating the sufficiency of evidence for a conviction, we view the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). As part of the test for the sufficiency of evidence, we assume the truth of the State's evidence and all reasonable inferences drawn from the evidence. *Id.* at 106. These inferences must be drawn in the State's favor and strongly against the defendant. *Id.* And we defer to the fact finder's resolution of conflicting testimony and evaluation of the evidence's persuasiveness. *Id.* Circumstantial evidence is as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

2.  Legal Principles

RCW 9.35.020(1) and (3) provide that a person, under circumstances that do not amount to first degree identity theft, may not "knowingly obtain, possess, use, or transfer a means of identification or financial information of another person . . . with the intent to commit . . . any crime." To convict, the State is not required to prove actual use of the financial information or the specific crime that the defendant intended to commit. *See State v. Fedorov*, 181 Wn. App. 187, 197-98, 324 P.3d 784 (2014) (specific crime); *State v. Sells*, 166 Wn. App. 918, 924, 271 P.3d 952 (2012) (actual use).

When a crime includes possession and intent as separate elements, intent cannot be inferred from mere possession alone. *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013). But evidence of possession alongside some slight corroborating evidence may be sufficient to infer intent. *Id.* Intent may only be deduced " 'if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.' " *Id.* (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).

In *Vasquez*, the Supreme Court reversed a conviction for fraud because possession of forged identification cards alone was insufficient to prove the defendant had the intent to injure or defraud. 178 Wn.2d at 14-16. In that case, a security guard stopped the defendant for shoplifting and found a fake social security and permanent resident cards with his name on them. *Id.* at 4. The defendant willingly told the security guard that he purchased the forged cards from a friend. *Id.* at 5. The court determined that the defendant's ready admission that the cards were forged was ambiguous at best and could not support the basis for inferring the necessary intent to defraud the security guard. *Id.* at 15-16.

14

3.    Analysis

George does not challenge whether there is sufficient evidence to prove that he knowingly possessed another's financial information. The only question here is whether there is some corroborating evidence to infer that George intended to commit a crime with Lopez-Hopkins's financial information.

Here, the evidence is somewhat equivocal. The fact that George was apprehended with the credit cards and a credit card activation letter along with the gun and the television on the same day as the items that were stolen from Lopez-Hopkins's home could suggest that George had no intent to use the cards but just had not discarded them yet. And there was no direct evidence that George intended to commit a crime with the cards.[2]

However, all that is needed to support an identity theft conviction is some slight corroborating evidence. *Vasquez*, 178 Wn.2d at 8. Here, two things corroborate George's intent to commit a crime. First, George had possession of 10 credit cards in the names of two different people – Lopez-Hopkins and her former husband. This fact allows an inference that George intended to use the multiple cards unlawfully. Second, the fact that George took and retained a letter containing activation information for one of the credit cards allows an inference that he intended to activate one of the cards and use it.

George also argues that there was no evidence that he or the burglar specifically targeted the credit cards and mail in the safe. However, this argument fails because the identity theft statute does not limit its application to individuals who come into possession of another's financial information as a result of a specific intent to steal that information. And the State does

---

[2] George cites and relies on an unpublished case from 2011. However, under GR 14.1(a), parties can cite to unpublished opinions only if they were issued after March 1, 2013. Therefore, we disregard that case.

not need to prove the specific crime that George intended to commit. *See Fedorov*, 181 Wn. App. at 197-98.

We hold that the State presented sufficient evidence to prove beyond a reasonable doubt that George intended to commit a crime with the financial information that he possessed.

D.      POSSESSION OF A CONTROLLED SUBSTANCE

George argues in a supplemental brief that his conviction for possession of a controlled substance should be reversed and vacated under *Blake*. The State concedes that this conviction should be vacated. We reverse and remand for the trial court to vacate Banks's conviction and for resentencing.

In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violates state and federal due process clauses and therefore is void. 197 Wn.2d at 195. As a result, any conviction based on that statute is invalid. *See In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004) (a judgment and sentence is invalid on its face when a defendant is convicted of a nonexistent crime). And a conviction based on an unconstitutional statute must be vacated. *See State v. Carnahan*, 130 Wn. App. 159, 164, 122 P.3d 187 (2005) (vacating a conviction that was based on a statute that the Supreme Court held was unconstitutional). Therefore, George's conviction for unlawful possession of a controlled substance must be vacated.

In addition, a conviction based on an unconstitutional statute cannot be considered in calculating the defendant's offender score. *See State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). Therefore, George's offender score must be amended to not include the vacated conviction and his prior conviction of attempted unlawful possession of a controlled substance.

Finally, without the current and prior unlawful possession of a controlled substance convictions, George's offender score will be lower than the offender score the trial court used at sentencing. The lower offender score could reduce the standard range sentences for his remaining convictions. *See* RCW 9.94A.510. Therefore, George is entitled to be resentenced.

E.      SAG CLAIMS

George makes a number of claims in his SAG that all are premised on the trial court's preliminary statements that Huber's testimony and the judge's ruling from the 2014 motion to suppress was not proper impeachment evidence. These claims have been addressed above or have no merit.

1.      Ineffective Assistance of Counsel

George asserts that he received ineffective assistance of counsel because his attorney (a) did not offer any exhibits or a copy of the transcript from the 2014 hearing, (b) failed to interview and call as a rebuttal witness the driver of the vehicle from which he jumped, and (c) failed to call the other officer who arrived at the scene as a witness. As a result, George claims that his right to prepare a defense was violated. We hold that these claims have no merit.

a.      Legal Principles

Ineffective assistance of counsel is a constitutional error that arises from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the defendant was prejudiced by the deficient representation. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. There is prejudice when there is a

reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id.*

We apply a strong presumption that defense counsel's representation was reasonable. *Id.* Counsel's conduct is not deficient if it was based on what can be characterized as legitimate trial strategy or tactics. *Id.* Counsel's decision whether to call a witness generally is presumed to be a matter of trial strategy or tactics. *State v. Weber*, 137 Wn. App. 852, 858, 155 P.3d 947 (2007). This presumption can be rebutted by showing that the witness was not offered at trial because counsel failed to conduct appropriate investigations. *Id.*

When addressing an ineffective assistance of counsel claim, we consider only facts contained in the record. *Estes*, 188 Wn.2d at 467. Specifically, we do not consider off-the-record conversations between the defendant and defense counsel. *Id.*

b.  Analysis

Regarding George's claim that his attorney failed to offer any exhibits or a copy of the transcript from the 2014 hearing, the record shows that the trial court reviewed the 2014 hearing. The trial court there had the same material that the State provided to George. Therefore, this claim fails.

Regarding George's claim that his attorney should have interviewed and called the driver of the car as a witness, the record shows that the driver fled the scene at some point between George exiting the vehicle and Huber physically apprehending George. Therefore, it is unclear how the driver could have contributed to George's defense.

Regarding George's claim that his attorney should have called the other officer who arrived at the scene as a witness, the record shows that he did not arrive until after Huber physically apprehended George. Therefore, he would not have been able to testify about the

initial seizure and subsequent pursuit. And George's attorney highlighted the discrepancies between the officer's police report and Huber's testimony regarding who recovered the credit cards, mail, and bag of pills.

Finally, George claims that his attorney violated a number of rules of professional conduct. But these claims depend on matters outside the record and as a result, we cannot consider them in this direct appeal. *Estes*, 188 Wn.2d at 467.

### 2. Confrontation Clause Violation

George argues that the trial court erred in limiting the scope of his cross-examination of Huber in violation of the confrontation clause because the proffered evidence was the only impeachment evidence in his case. George's appellate counsel already addressed this issue and accordingly, we do not need to separately address George's argument here. *See State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012). And we reject this argument above.

### 3. Cumulative Effect

George argues that the cumulative effect of his attorney's failure to render effective assistance of counsel and the trial court's error to limit the scope of his cross-examination of Huber resulted in a violation of his due process rights.

Under the cumulative error doctrine, the defendant bears the burden to show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). Here, George fails to show ineffective assistance of counsel or any error regarding Huber's cross-examination. Therefore, we hold that there is no cumulative error that warrants a new trial.

CONCLUSION

We affirm George's convictions of second degree unlawful possession of a firearm, possession of a stolen firearm, and second degree identity theft, but we reverse his unlawful possession of a controlled substance conviction and remand for the trial court to vacate that conviction and for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

CRUSER, J.

VELJACIC, J.